49 N.J. Super. 230 (1958)
139 A.2d 424
CITY OF BAYONNE, A MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT,
v.
DIVISION OF TAX APPEALS IN THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY AND AARON K. NEELD, DIRECTOR, ETC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1958.
Decided March 10, 1958.
*231 Before Judges GOLDMANN, FREUND and CONFORD.
*232 Mr. Leo Rosenblum argued the cause for plaintiff-appellant.
Mr. David M. Satz, Jr., Deputy Attorney-General, argued the cause for defendants-respondents (Mr. Harold Kolovsky, Acting Attorney-General, and Mr. Thomas P. Nolan, Deputy Attorney-General, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
The City of Bayonne was dissatisfied with the determination by the Director of the Division of Taxation of the average ratio of assessed to true value of real estate in that municipality for the year 1956 for purposes of promulgation of the table of equalized valuations used in the calculation and apportionment of state aid to local school districts for the school fiscal year 1957-1958. The table is prepared under L. 1954, c. 86 (N.J.S.A. 54:1-35.1 et seq.), and the state aid is payable under a formula fixed by the State School Aid Act of 1954 (L. 1954, c. 85; N.J.S.A. 18:10-29.30 et seq.). The average ratio was slightly modified by the Division of Tax Appeals on the appeal of Bayonne, but the city is still dissatisfied for reasons to be stated, and appeals from the final judgment in the Division.
State school aid is apportionable upon a statutory formula, the details of which do not presently concern us except in the respect that the higher a municipality's equalized real estate assessed valuations, the lower its aid from the State, and vice-versa. Bayonne's grievance is that its average ratio of assessed to true value for the year 1956 as fixed by the Director is less than it should be because there was omitted from the sales transactions upon the basis of which the ratio was calculated a particular sale whose inclusion would have operated to increase its ratio and thus decrease its equalized true value and consequently increase its school aid from the State for the fiscal year mentioned above.
L. 1954, c. 86 requires the promulgation of a table of equalized valuations, showing, for each taxing district in the State, the average ratio of assessed to true value of all *233 real property, to be completed on or prior to October first of each year for use in the apportionment of state school aid for the fiscal year commencing the following July 1. The method of fixing the average ratios is specified in N.J.S.A. 54:1-35.3 as follows:
"True value for the purposes of this act shall be deemed to be valuation at current market prices or values, determined in such manner as the director may, in his discretion, select. The director shall determine the ratio of aggregate assessed to aggregate true valuation of real estate of each taxing district. He may make such determination by reference to the county equalization table whenever he is satisfied that the table has been prepared according to accepted methods and practices and that it properly reflects true value or a known percentage thereof for the several taxing districts in the county. The director, with respect to any and all taxing districts, may use the assessment ratios reported in the Sixth Report of the Commission on State Tax Policy (Trenton, 1953) and may consider such other assessment ratio studies as may be available. He may make such further and different investigations of assessment practices as he may deem necessary or desirable for the establishment of the assessment ratios required by this act."
The statute permits review of an equalization table by the Division of Tax Appeals on complaint of any taxing district within ten days after its promulgation. If the equalized valuation of any district is found by the Division to be erroneous, it is required to "revise and correct" the table. However, in any such proceeding the assessment ratios as promulgated "shall be presumed to be correct" and shall not be revised or modified by the Division "unless the complainant district shall present proof that upon all the evidence available such ratio or ratios could not reasonably be justified." N.J.S.A. 54:1-35.4.
The assessment ratios reported in the Sixth Report of the Commission on State Tax Policy, referred to in N.J.S.A. 54:1-35.3, were developed in connection with a study of real estate assessment practices throughout the State and represented the early phase of a program in the Division of Taxation for improvement of the process of equalization of aggregate assessments as between municipalities in each *234 county for purposes of fair apportionment of the expense of county government, and, ultimately, the betterment of the quality of the rolls of individual tax assessments. The basic technique in the development of such ratios is the sales sample method, which is recognized by and used in many states for equalization purposes, according to the testimony of the defendant Aaron K. Neeld, Director of the Division of Taxation at the time of the preparation of the table questioned in this case and now Treasurer of the State of New Jersey. This method consists in general of collecting records of recorded deeds for the transfer of real property in as broad a sampling of such transactions as is practicable, ascertaining the sales consideration from the federal revenue stamps, discarding all transactions which for various reasons are presumed not to reflect the bona fide consideration in a sale between a willing buyer and willing seller dealing at arms' length, and then calculating the ratio between the aggregate assessed valuations of the properties involved in the transactions found usable in a given taxing district and the aggregate indicated sales prices in such transactions.
The New Jersey Division of Taxation, by its Local Property Tax Bureau, screens all sales transactions reported to it by local assessors and county boards of taxation and makes determinations as to which sales are usable or non-usable on the basis of a list of 26 specified criteria (mortgages as part of consideration, family transactions, sales by public bodies, etc.). These determinations are necessarily summary in nature since almost 200,000 deeds are recorded each year and an attempt is made to screen as many as possible for usability. The sales transaction period used is the year beginning July 1 of the prior calendar year. Such transactions as are not screened by the cut-off date fixed each year for purposes of completion of the ratios in time for promulgation of the tables on October first are not used.
The equalized valuations for each taxing district are determined by the Director on a "weighted" basis and are arrived at as follows. The usable sales are divided into four classifications: vacant land, residential property of four dwelling *235 units or less, farm land, and all other real estate (commercial, industrial, apartment houses, etc.). A separate ratio is determined for each of the four classes on the basis of the transactions in that class and an equalized aggregate valuation of all the real property in that class is determined by application of the class ratio to the aggregate assessed valuations of all property in that class in the taxing district. The total of the aggregate equalized valuations for the four classes is determined by addition, and this is the operative figure for purposes of distribution of state school aid. The total of assessed valuations in the district is then divided by the total last mentioned, resulting in the final weighted average ratio for the district. This is the figure shown in column 2 of the table of equalized valuations (N.J.S.A. 54:1-35.2). Under the particular four-class method of determining the final ratio currently used by the Director, that ratio figure is only a statistic for inclusion in the statutory table. As noted above, the operative figures are the ratios for each of the classifications, as they are the key to the determination of the components of the aggregate equalized valuations, which, in turn, play a part in the statutory formula for calculating the state school aid distributable.
The 1954 table of equalized valuations, the first made under the state school aid legislation cited, was based exclusively on the ratios in the Sixth Report of the Commission on State Tax Policy aforementioned, time not permitting a new study.
The table made by the Director for the year 1955 (fiscal school year 1956-1957) was arrived at after first submitting to each taxing district lists of sales which the Director tentatively had classified as usable or non-usable, and adjustments were made in either category where the Director was satisfied of the merit of a complaint by a taxing district in any case brought to his attention prior to the cut-off date for enabling the promulgation of a final table by October 1, 1955, as required by the statute, or pending the appeal of any table before the Division of Tax Appeals.
*236 The dispute involved in the present appeal, although technically concerning only the average ratio for Bayonne for 1956, arises out of the administration of the statute for both the equalization years 1955 and 1956. This is for the reason that in preparing the ratios and tables for the year 1956 the Director of the Division of Taxation determined to use, in addition to the sales recorded during the 1956 transaction-period, as screened, the sales which had been used in the final determination of the 1955 average ratios. This was done in order to broaden the statistical basis for the ratios, as the number of sales in the third and fourth categories mentioned above, in either year, were generally sparse. It has been stipulated on the present appeal that in the preparation of the ratios for the year 1955 in Bayonne and all other Hudson County taxing districts the Director's original reliance was upon a list of sales compiled under the supervision of the secretary of the Hudson County Board of Taxation resulting from a study of all known and recorded real estate transfers in the county during the applicable transaction-period. The Director had deleted from the list all sales deemed by him non-usable, and the remaining sales on the list were further examined and screened by him in the manner above described.
The nub of the present controversy concerns a sale on June 23, 1955 from Fritchie Brothers, a corporation, to 69 Avenue A Realty Corporation, for a sales price of $68,000. The assessed valuation of the property was $167,000. The property falls within the fourth class of sales aforementioned. The Director excluded the sale from the Bayonne ratio determination for 1955 for the reason that prior to the date when the final list of usable sales had to be closed in order to promulgate a timely table (October 1, 1955) for the year 1955, the impression of the Local Property Tax Bureau was that there was an unreported mortgage of unknown amount included in the purchase price. At a later time, and after the ratios were fixed, it was discovered that no mortgage did in fact exist. Bayonne appealed from the 1955 table, and the appeal was settled by conferences between *237 representatives of the city and the Director in November 1955, on a basis favorable to Bayonne, through adjustment of sales other than the Fritchie sale. No adjustment was sought by Bayonne on that sale. The record does not clearly indicate whether the Bayonne representatives by then had definite information indicating that the sale was properly usable.
In fixing the ratio for Bayonne for 1956 at 62.94% the Director, as indicated above, used his final list of 1955 sales as well as his list of usable 1956 sales. (Adjustments as to other 1956 sales pending appeal in the Division of Tax Appeals resulted in an increase of the 1956 ratio to 63.17%.) Thus the Fritchie sale continued to be excluded for purposes of fixing the 1956 Bayonne ratio. (As explained above, the specific ratio affected was that for fourth-class property.) Bayonne contends this is error, as the sale is now conceded to be of a character which, if originally known, would have stamped it as usable and resulted in its use in the 1955 list and in the determination of the 1955 ratio for Bayonne. We are informed that exclusion of the sale lessens Bayonne's share of state school aid for the year 1957-1958 by approximately $17,000.
The Director defends his administrative determination that the final 1955 list of sales should be conclusive for purposes of use of the 1955 list in the calculation of the 1956 ratios. It is his position that as a matter of administrative practicality the 1955 sales list as finally determined and used for 1955 ratio purposes, after opportunity for complaint, negotiation, or appeal by any interested taxing district, should be permitted to be taken by the Director as conclusive and final, even for purposes of use in determining the 1956 ratios. He asserts that he has applied this policy uniformly as to all taxing districts. He points out that it would be administratively unfair and impracticable to permit a taxing district, after closing of the appeal period directly applicable to a particular equalization year, to attack the sales list established for use in that year, upon the basis of isolated sales selected by the taxing district. He asserts that since *238 it is fairly inferable that the taxing district will select for challenge only those administrative decisions as to inclusion or exclusion of sales which adversely affect its ultimate ratios, it becomes highly desirable, in order to offset the propensity for distortion inherent in that consideration, that he should re-examine his prior decisions as to other relevant sales and make such redeterminations as further investigation warrants. But the number of total recorded transactions is so great and the time available for completion of the task in pursuance of the statutory directions so limited that the entire administrative process would be crippled if the Director, as a matter of fairness to the State, which has to provide the additional money involved whenever a taxing district succeeds in raising any of its component average ratios and thereby lowering its aggregate equalized valuations, were put to the necessity of re-examining his entire process of sales determinations as of a particular closed equalization year merely because an affected taxing district was able to show him one or more isolated cases of mistaken exclusion (or inclusion) of a sale.
It might be said, in answer to the Director's argument, that his reasoning is equally applicable to the submission of objections in respect to particular sales during the period of processing of the lists of sales for a current year, and yet the Director willingly accepts objections and makes adjustments on behalf of taxing districts during that period. But the Director's rejoinder would undoubtedly be that fairness suggests that the taxing districts should have at least one opportunity to complain of a decision as to the usability of a particular sale, whatever the administrative inconvenience involved, but that after that opportunity has been afforded and the list for a given year finally closed he is as fully justified in using that list in conclusive form as part of the basis for a ratio one year later as the Legislature itself was in making the ratios contained in the Sixth Report of the State Tax Policy Commission, just as they stood, usable by the Director in fixing statutory ratios for later years.
*239 The breadth of administrative discretion vested by this statute in the Director in connection with the determination of average ratios has been a matter of pointed comment by the courts, although never, as here, upon a review of an equalization table for state school aid purposes. See City of Passaic v. Passaic County Board of Taxation, 18 N.J. 371, 382-388 (1955); Borough of Carteret v. Division of Tax Appeals, 40 N.J. Super. 439 (App. Div. 1956); Township of North Bergen v. Division of Tax Appeals, 40 N.J. Super. 510 (App. Div. 1956), affirmed 24 N.J. 89 (1957). In particular are we controlled by the statutory enjoinder that ratios promulgated by the Director not be revised or modified unless proof is presented "that upon all the evidence available such ratio or ratios could not reasonably be justified." The task imposed upon the Director is one of great administrative complexity, involving, each year, literally scores of thousands of subordinate determinations. So long as his methods are fair and reasonably related to the ultimate objective of achieving fairly accurate approximations of the ratios between true and assessed valuations in each taxing district (ratios which, of course, can never be known with certainty), his ultimate determination as to an average ratio for a given municipality cannot be challenged merely because a different method in any part of the complex process could be equally reasonably defended. We consider that the dispute here before us is one as to method, not over the abstract question of the usability per se of the particular sale in question. We agree with the justification advanced by the Director for his administrative determination that in fixing average ratios for the year 1956 he should use sales samples used for the same purpose for the year 1955. As of the close of the period for final selection and use of the 1955 list of sales, that list was fairly usable not only for 1955 equalization purposes but as a component of a broader base for determination of the 1956 ratios. This conclusion is not altered by the disclosure by Bayonne subsequently that another sale could have properly been included in the 1955 list.
*240 Bayonne argues, however, that while the position of the Director might be defensible if the municipality had been given notice during the 1955 screening period that the final list of 1955 sales was to be used also for 1956 ratio purposes, it is unfair to make the 1955 sales list retroactively conclusive for 1956 purposes, as the municipality might have elected to seek an appellate determination of the propriety of exclusion of such a sale as the Fritchie transaction in connection with the 1955 ratios had it then known that the 1955 sales were also to play a part in the determination of the 1956 ratios. This position, we think, misconceives the basic nature of the function delegated to the Director under the statute. The determination of ratios under the act is a step in a species of equalization. The equalized valuation figures are the determinative ones. The Director is here performing a legislative or quasi-legislative function. City of Passaic v. Passaic County Board of Taxation, supra, 18 N.J. at page 384. The Legislature might itself have fixed the exact amounts of school aid distributable each year to the municipalities and it may entrust the effectuation of its declared policy in that regard to an administrative agency providing it fixes adequate standards toward that end. See Jersey City v. Martin, 126 N.J.L. 353, 362 (E. & A. 1941). Bayonne does not complain of lack of adequate standards in the controlling statute.
The administrative action here in question being quasi-legislative in nature, and there being neither constitutional nor statutory requirements that the Director give notice and opportunity for hearing to any affected municipality of any step in arriving at ratios and equalized valuations, no such duty or right existed. Garden State Farms v. Armstrong, 31 N.J. Super. 61, 77 (App. Div. 1954). The fact that the Director actually gives notice and opportunity for informal hearing to municipalities while engaged in the process of screening a current list of sales does not create the duty. Only one inquiry was enjoined upon the Division of Tax Appeals on the present review under the statute. Did the taxing district show "upon all *241 the evidence available" that the ratios fixed in its case "could not reasonably be justified"? The statute does not compel the Director to use lists of sales at all, much less control his method of selection of sales for ratio purposes. As already seen, the attack here is confined strictly to the propriety of the determination by the Director, made applicable not especially to Bayonne but uniformly to all the taxing districts in the State, that the final lists of 1955 sales as they stood after the completion of the correction process, which was open to participation by any taxing district, should be applied without further revision in any respect for purposes of use in fixing 1956 ratios.
Since, as we have seen, the city was not entitled to notice of any step in the administrative process, it was specifically not entitled to notice in 1955 that the Director was going to use 1955 sales in arriving at the 1956 ratio. The failure to give such notice cannot, therefore, render the use of the 1955 list "unfair," as claimed, in any presently material sense, whether or not the 1955 list is taken as conclusive. The only question is whether there is any clear administrative unreasonableness in the decision so to use the final 1955 list of sales. The general trustworthiness of such lists, for present purposes, whatever isolated flaws therein may be shown by the hindsight of later investigation, is unquestionable. No a priori unfairness is shown in this particular case by the application of the uniform policy stated to Bayonne's ratio for 1956. Practical exigencies may justify an administrative practice in the course of a quasi-legislative function, notwithstanding possible occasional weaknesses, if generally fair and geared toward the accomplishment of the legislative objective on the basis of reasonable probabilities. We think the Director's administration of his function in the respect complained of meets that criterion. In the light of the complexity and magnitude of the task imposed by the statute upon the Director, we cannot say that on the record before us his execution thereof in application to the Bayonne ratio for 1956 is not reasonably justifiable.
*242 This leads to concurrence in the final judgment of the Division of Tax Appeals without the necessity of considering other points of argument advanced by the Director or the reasoning by which the Division arrived at its determination.
Affirmed.