WILLIAM KINGSLEY, DIRECTOR OF THE DIVISION OF TAXATION IN THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, APPELLANT. v. DIVISION OF TAX APPEALS IN THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY AND THE TOWN OF KEARNY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, RESPONDENTS.

CITY OF JERSEY CITY, CITY OF HOBOKEN, TOWNSHIP OF WEEHAWKEN AND TOWN OF WEST NEW YORK, MUNICIPAL CORPORATIONS IN THE COUNTY OF HUDSON, APPELLANTS, v. TOWN OF KEARNY, DIVISION OF TAX APPEALS IN THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY AND THE HUDSON COUNTY BOARD OF TAXATION, RESPONDENTS.

THE HUDSON COUNTY BOARD OF TAXATION, APPELLANT, v. THE TOWN OF KEARNY, A TAXING DISTRICT IN THE COUNTY OF HUDSON, STATE OF NEW JERSEY, AND THE DIVISION OF TAX APPEALS IN THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENTS.

Argued May 6, 1963—Decided July 1, 1963.

See also 76 *N. J. Super.* 531, 185 *A. 2d* 42.

Mr. *Alan B. Handler*, Deputy Attorney General of New Jersey, argued the cause for appellants, William Kingsley and The Hudson County Board of Taxation (*Mr. Arthur J. Sills*, Attorney General of New Jersey, attorney).

Mr. *Leo Rosenblum* argued the cause for appellants City of Jersey City, City of Hoboken, Township of Weehawken and Town of West New York (*Mr. Meyer Pesin*, attorney for City of Jersey City; *Mr. Herbert H. Fine*, attorney for City of Hoboken; *Mr. Leon S. Milmed*, attorney for Township of Weehawken; *Mr. Samuel L. Hirschberg*, attorney for Town of West New York).

Mr. *Robert J. McCurrie* argued the cause for respondent Town of Kearny.

The opinion of the court was delivered by

FRANCIS, J. These three appeals were consolidated for argument because they arise out of the same transaction and involve common questions of law and fact. Review is sought of two judgments of the Division of Tax Appeals increasing the average ratio of assessed value of real property to true value in the Town of Kearny for application in the 1960 tax year from 33.87% to 46.31%. The lower figure was promulgated by the Director of the Division of Taxation in his 1959 table of equalized valuations for use in the allocation of state school aid to the various municipalities of Hudson County, including Kearny. That lower percentage was accepted by the Hudson County Board of Taxation and utilized for the purpose of apportioning the county tax burden for 1960 among the same municipalities. In calculating the ratio, the Director excluded certain sales of industrial property in Kearny made during the period used in constructing the equalization table. These sales, if included, would have raised

the ratio of assessed value to true value in the equalization table to 46.31%. The Director's refusal to do so produced a decrease of $26,326 in Kearny's allotment of school aid for 1960. Acceptance of the Director's table and ratio by the County Tax Board imposed on the town an additional county tax burden substantially in excess of $600,000.

Kearny attacked the 33.87% ratio on two fronts. An appeal was taken to the Division of Tax Appeals from the Director's order promulgating the equalization table for school aid distribution purposes. The county equalization table adopted by the County Tax Board (but based on routine acceptance of the Director's table) was challenged before that board. The attacks were unsuccessful and ultimately both matters reached this court. *Kearny v. Division of Tax Appeals,* 35 *N. J.* 299 (1961).

The need for an equalization table and for a determination of the ratio of assessed to true value of property for school aid and county tax distribution stemmed from the failure of local assessors to assess property in their municipalities at true value or at a uniform percentage thereof uniformly applied by all municipalities. In preparing the table, the Director of the Division of Taxation follows a convenient and uncomplicated system. All sales of real estate in each municipality in the State during the year being studied are reported to him. The sale price as indicated by the revenue stamps on the deed is treated as representing true value. The ratio of assessment to true value is then determined by comparison between the sale price and the assessed value. The process is further refined by classifying the sales into four categories: (1) vacant land; (2) residential; (3) farm; (4) "other" (which includes commercial, industrial, apartments, etc.). ⸲An over-all average ratio is calculated, which, by application to the total assessed value of real property in the municipality under study, as reported by the local assessor, produces the aggregate equalized (hypothetically the true) value of such property. This total figure provides the basis for allocation of state school aid to each municipality, *N. J. S. A.* 18:10–29.33,

and (when and if adopted by the county tax board) for distribution of the county tax burden among the municipalities. See *Kearny v. Division of Tax Appeals, supra* (35 *N. J.*, at *p.* 303).

As we pointed out in the earlier opinion, during the year in question more than 50% of assessable real property in Kearny was industrial and the sales of such property showed a higher ratio of assessed to true value than was true in the other classes. Moreover, the sales were markedly fewer in the industrial class (only 9 out of 287), but the assessments were larger and the tax revenue therefrom substantial. Consequently, omission of a few such sales in fashioning the equalization table was bound to have a very significant impact on the town's overall average ratio. *Id.*, at *p.* 314. The Director declined to utilize three industrial sales in his calculations. They were: (1) E. I. duPont de Nemours & Company to Carla Holding Company on August 11, 1958 for $9,500; (2) Congoleum-Nairn, Inc. to Kearnyland, Inc. on January 15, 1959 for $800,000; and (3) duPont to Wasco Chemical Company, Inc. on September 26, 1958 for $400,000. He classified them as within a category of non-usable sales called "split-offs," *i. e.*, "sales of property conveying only a portion of the assessed unit." Such transfers under administrative rules established by him are generally to be excluded unless "after full investigation it clearly appears that the transaction was a sale between a willing buyer and a willing seller and * * * meets all other requisites of a usable sale." *Id.*, at *p.* 306.

After studying the record we concluded that none of the three sales should be treated as a "split-off." Sales (1), duPont to Carla Holding Company, and (2), Congoleum-Nairn, Inc. to Kearnyland, Inc., required no further consideration. Consequently, we directed that they be utilized by both the Director and the County Board for equalization table purposes. As to (3), however, duPont to Wasco Chemical Company, Inc., we felt that an important issue had not been fully explored below. The issue was whether the $400,000 sale price represented the fair purchase price of the land and

buildings involved, and was arrived at by the parties dealing with each other as an owner willing but not compelled to sell, and a buyer willing but not compelled to buy. Therefore we remanded the matter to the Division of Tax Appeals for full factual development and determination of that problem. *Id.*, at *p.* 319.

■ The question arose largely because the contract of sale included personalty consisting of equipment and inventory as well as real estate, and provided as follows:

"It is agreed between the parties hereto that the purchase price of Six Hundred Thousand Dollars ($600,000.00), herein provided, was determined on the following basis: Real estate and improvements thereon situate, Four Hundred Thousand Dollars ($400,000.00) ; Movable manufacturing equipment, One Hundred Fifteen Thousand Dollars ($115,000.00) ; Inventory, Eighty-five Thousand Dollars ($85,000.00)."

The position of the Director, the County Board of Taxation, and the municipalities was that the $400,000 figure was arbitrarily allocated by the parties to the real estate without regard to fair market price or to an agreement between them that it bore any relation to such price. Although our earlier opinion recited that Kearny had offered substantial testimony to establish that $400,000 was a fair market price, remand, for the purpose described above, was deemed advisable to make certain that the public interest was fully safeguarded.

On rehearing, Kearny adduced further evidence to support its position that $400,000 was agreed upon by the parties as a fair price for the property, and that, in fact, such sum reasonably represented a fair market price. Neither the Director nor the public bodies offered any contradictory proof.

Two expert real estate appraisers testified for Kearny. One had valued part of the land and buildings in 1956; the other had appraised the remainder about five months before the contract of sale in question was executed. Their testimony clearly supports the view that $400,000 was such a price as might reasonably be agreed upon by an owner willing but not compelled to sell, and by a buyer willing but not compelled to buy.

Moreover, in that connection, considerable persuasive proof was introduced by the duPont representative who negotiated the transaction and by the President of Wasco Chemical Company, Inc., who handled the matter for his company. It is clear from their statements that they were competent and experienced businessmen dealing at arm's length on the multiple parts of their transaction, and fully aware of the fair values of the various real and personal properties involved. Their testimony demonstrated not only that the $400,000 figure was realistically related to market value of the realty, but also that it was reached by them in such fashion as to stamp the agreement thereon as a fair bargain, arrived at independently of the other aspects of their over-all transaction.

At the conclusion of the hearing the Division found:

"As stated earlier herein no evidence was offered on behalf of the defendants-respondents and it appears obvious that based upon the evidence submitted it must be concluded that the sum of $400,000.00 was in fact considered by duPont and Wasco as the fair purchase price for the real estate encompassed by the deed and that both buyer and seller were willing actors and neither one nor the other was compelled to act."

We are in accord with that finding.

Further objections to the sale as a usable one for equalization table purposes were raised in the Division and in this court. Appellants argued that the realty sale was a dependent part of a multi-part two contract transaction, conveying the personalty described above, a sale to Wasco of the capital stock of a tenant corporation occupying a portion of the premises, and the temporary retention by duPont on a month-to-month rental basis of a portion of the premises for storage purposes and to enable it to wind up its business there. There is no necessity to set forth these additional matters in detail for we are satisfied that they are not of sufficient consequence to require a departure from our conclusion that sale of the realty for $400,000 fairly demands recognition as an independent unit of the entire business dealings between Wasco and duPont.

Our determination in this unusual instance does not impair the basic discretion vested in the Director of the Division of Taxation in preparing equalization tables. It must be kept in mind that the fashioning of such tables is not a perfect process. Equalization of aggregate assessments has been described as "imperfect," as representing an effort to minimize as far as possible the "unfair distribution of the county tax" (see *City of Passaic v. Passaic County Bd. of Taxation,* 18 *N. J.* 371, 381 (1955); *Sixth State Tax Policy Commission Report* (1953), *p.* xxiv); and as possessing "some inherent limitations which, in the interest of fairness and justice to local taxpayers in occasional specific factual situations, call for adjustment of [the Director's or the County Tax Board's] formulaic results." *Kearny v. Division of Tax Appeals, supra* (35 *N. J.,* at *p.* 310). The process is a reasonable work-a-day approximation made necessary by lack of inter- and intra-municipal uniformity in assessment practices.

Equity and justice to a particular municipality and its taxpayers may require occasionally a somewhat more specific study of a particular sale or sales by both Director and County Tax Board. *Id.,* at *p.* 310; *In re Appeals of Kents* 2124 *Atlantic Ave., Inc.,* 34 *N. J.* 21, 31 (1961). Strict adherence to a general rule, which superficially may appear to warrant assigning such sale or sales to a general category of transactions listed as unusable by the Director, may do a serious injustice both in distribution of school aid and in allocation of the municipality's share of the county tax burden. The present case is an illustration of the occasional need for more detailed study. Exclusion of the three sales had a serious, and in our judgment, inequitable impact on the Kearny tax assessment structure. It lowered the average ratio of aggregate assessments to the hypothetical aggregate true value of the local property from 46.31% to 33.87%, and thus increased the town's share of the county tax burden by $600,000 and reduced the school aid by $26,326. Where effects of such magnitude are visited upon local taxpayers as the result of an *ex parte* or informal application of a categorical rule to a few

sales, more detailed study and evaluation of them should be engaged in by the Director upon request of the interested municipality for a hearing on the matter. Justice demands addition of that task to the equalization process, and we doubt that its assumption will be an unduly burdensome one.

In this connection, it should be recalled that the county boards of taxation are required to prepare an equalization table for county tax purposes. *N. J. S. A.* 54:3–17. Such table is subject to attack by an affected municipality. *N. J. S. A.* 54:3–18. Although in practice the Director's table is usually accepted as *prima facie* correct and adopted by such boards as their own table for distribution of the county tax burden, it is not binding on them. *City of Passaic v. Passaic County Board of Taxation,* 27 *N. J.* 467 (1958). A municipality may question the table when tentatively promulgated by a board, whether the table is arrived at by independent study or is predicated solely on the Director's figures. And such attack requires a hearing on the objections. *N. J. S. A.* 54:3–18. Obviously Kearny should have been given a full statutory hearing by the Hudson County Board of Taxation when it sought to have the challenged sales used in the formulation of the county table. See *Carteret v. Div., etc., Dept. of Taxation & Finance,* 40 *N. J. Super.* 439, 465 (*App. Div.* 1956).

The judgment is affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.