CITY OF NEWARK, PETITIONER-CROSS APPELLANT, v. ESSEX COUNTY BOARD OF TAXATION, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 29, 1973—Decided May 17, 1973.

Before Judges CARTON, MINTZ and LARNER.

*Mr. Richard M. Conley,* Deputy Attorney General, argued the cause for Respondent-Appellant (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

*Mr. Donald S. Coburn,* Assistant Corporation Counsel, argued the cause for Cross-Appellant (*Mr. William H. Walls,* Corporation Counsel for the City of Newark, attorney).

The opinion of the court was delivered by

CARTON, P. J. A. D. This appeal involves the propriety of the tax equalization tables promulgated by defendant Essex County Board of Taxation for the year 1971, and specifically as they affect petitioner City of Newark.

Newark made a two-pronged attack on the tax equalization table in the Division of Tax Appeals, asserting that (1) the Board improperly adopted the equalization ratio developed by the State Director of Taxation for distribution of school

monies, and (2) the Board improperly included in the equalization table data some 245 Newark sales of real property which were financed by V. A. and F. H. A. loans.

The Division rejected Newark's first argument that adoption of the state equalization ratio was improper, but accepted its argument with respect to 65 sales financed by V. A. and F. H. A. loans. These sales were withdrawn from the statistical sample and the municipal ratio of assessments to true value was recomputed on this basis.

In its appeal to this court the Board seeks to have its tax equalization tables approved as originally adopted. Newark's cross-appeal repeats its challenge to the Board's use of the state equalization ratio and reasserts its claim that none of the V. A. and F. H. A. financed sales should have been included in determining the equalization table.

### USE OF STATE EQUALIZATION RATIO IN COMPUTING THE COUNTY RATIO OF ASSESSED VALUE TO TRUE VALUE.

Newark argues that the method of computing the ratio of assessed value to true value used by the Division of Taxation for each municipality and adopted by the County Board for its equalization tables is unreasonable. That method may be described as follows: The real property in the municipality is divided into four classes (residential, commercial, vacant and farm). The municipal assessment value is then compared with the record of sales in each category for the past year, certain categories of sales being eliminated (intra-family *et al.*). The ratios in each of the four categories are then averaged, resulting in an overall municipal ratio. That overall ratio is then averaged with the final ratio for the previous year (recomputed with added and omitted assessments), thus producing a new final ratio for the current year. In other words, the sales data from any single year have a progressively diminishing effect on each year's final ratio — first 50%, then 25%, then 12½% and so on *ad infinitum*.

Newark specifically objects to the last step — the averaging of the one-year figure with the final ratio from the previous year. That process, it contends, unduly favors municipalities with increasing property values and works against those with declining values such as Newark. This analysis of the effect of averaging appears to be correct — the process causes the final ratio to lag behind the results of any single year study, whether property values are rising or falling.

It does not follow, however, that this result is necessarily unreasonable. The Legislature has not prescribed a specific plan or method to be followed by county boards in devising their equalization tables, and they are free to adopt any reasonable and efficient method. *N. J. S. A.* 54:3–17; *Passaic v. Passaic County Bd. of Taxation,* 18 *N. J.* 371, 385 (1955); *Willingboro Tp. v. Burlington County Bd. of Taxation,* 62 *N. J.* 203 (1973).

Our Supreme Court has specifically held that a county board may adopt the ratios promulgated by the Director of Taxation. *Passaic v. Passaic County Bd. of Taxation, supra; Greenwich Tp. v. Gloucester County Bd. of Taxation,* 47 *N. J.* 95, 99 (1966).

We conclude that Newark has not carried its burden of showing that the County Board or the Division of Tax Appeals acted unreasonably in the present case in adopting the ratios promulgated by the Director of Taxation, which include the averaging process to which the city specifically objects. The averaging process was fair and reasonably related to the ultimate objective of achieving fairly accurate approximations of the ratios between true and assessed valuation in each tax district.

True value is an ideal, unrealizable concept. See *Kearny v. Division of Tax Appeals,* 35 *N. J.* 299, 303 (1961). The best one can do is to approximate true value by means of observable data, *i. e.,* sales. Obviously, the greater the number of sales that can be included in the sample, the more likely it is individual distortions will be ironed out and the ideal more nearly approached. The Director's method of comput-

ing the final ratio of assessed to true value for any given year is designed to achieve this objective by including all sales from the first year the method went into operation but weighting such sales proportionately less as they are more remote in time from a particular year for which the ratio is determined.

The reasoning behind the averaging process is that the utilization of prior year's data in conjunction with the current years data serves to partially level sharp peaks and valleys in the ratio occurring in two successive years. The averaging process thus serves to soften fluctuations in ratio from year to year and to inject a degree of continuity and predictability into a taxing district's county burden from year to year. This is important to the tax district because it provides a means of predicting the county tax burden in advance for budget purposes. It is also desirable from the taxpayer's point of view because it tends to keep individual tax bills fairly constant.

## INCLUSION OF V. A. AND F. H. A. FINANCED SALES IN DETERMINING COUNTY EQUALIZATION TABLES

Newark's attack upon the equalization tables directed towards the inclusion of 245 residential sales financed by V. A. and F. H. A. mortgages presents more difficult and complex problems. Newark's argument is that such sales should not be used or considered useable because they do not reflect the true value of the property involved.

Its argument is that under existing market conditions sales prices in such transactions are greatly inflated and are not indicative of market value or what a willing buyer will pay and a willing seller will accept. The thesis is that in such transactions in all probability no sale at all would come about but for the availability of government-insured financing; that the buyer who often makes little or no down-payment is concerned only with the amount of the required monthly payment and not the price. The seller, it is urged, must include in

the sales price a number of items not usually required, or not required to the same extent as in sales of property not so financed. These include (1) points, sometimes as much as 10% of the mortgage; (2) buyers' closing costs, which may amount to $1,000; (3) repairs required by the governmental insuring agency as a condition to mortgage approval, and (4) higher real estate commissions. On this basis it is contended that the price does not reflect true value as that term is defined in *N. J. S. A.* 54:1–35.3.

The Division judge agreed that as to 65 particular sales the sale price was so distorted from the norm by the presence of these factors that they should be considered nonuseable. Newark contends that such factors are so common to all of such transactions that all should be stricken as a class from the list of useable sales in Newark. The Board counters that none should be eliminated.

The threshold question is whether the circumstance that numerous sales of property are financed through V. A. and F. H. A. government insured loans may properly be considered by the County Board as a factor in determining if they are nonuseable in the preparation of the county equalization ratios. The Director has established 27 categories of nonuseable sales for his sales studies for the preparation of the state ratios for distribution of school aid. One of these is a catchall for sales not otherwise excluded under the other categories. Arguably, V. A. and F. H. A. financed sales could be excluded as falling within this group.[1]

---

[1] It should be noted that we are not directly confronted with the question whether, in the formulation of the Director's table, a new category for sales of this kind should be established, or whether they should be included in the "catchall" category. The ratio promulgated by him relates directly to the distribution of moneys to local school districts under *N. J. S. A.* 18A:58–1 *et seq.* It has a collateral effect on the share of Newark in relation to that of other municipalities in Essex County because the Essex County Board has adopted the Director's tables in arriving at the county equalization table. See *Cherry Hill Tp. v. Director, Div. of Taxation,* 119 *N. J. Super.*

The Board argues that financing has never been used by the Director of the Division as a factor in determining whether the sales of real property are useable samples. This argument proceeds upon the theory that individual sales should not be considered in the sales ratio studies because the "objective of reliability" in such studies is achieved by the inclusion of many sales, thereby tending to cancel out possible distortions.

Acceptance of this view would make for administrative convenience and efficiency as well as ease of review. It finds some support in the principle that "any reasonable and efficient method of equalization may be used"; that mathematical exactness is not required; and that a degree of imperfection will be tolerated. *Willingboro Tp. v. Burlington County Bd. of Taxation,* 62 *N. J.* 203 (1973). *Willingboro* recognizes, however, that the County Board should not become subject to the tyranny of a formula in effectuating the equalization process. It emphasizes that when any method used imposes on a particular municipality a share "dramatically or substantially excessive," the reviewing agency or the court must grant relief. See *Kearny v. Div. of Tax Appeals, supra,* 35 *N. J.* at 310. Thus, it is not determinative that the Director, in making up the state ratios for distribution of school monies, has not heretofore regarded financing as a factor in determining the categories of excludable sales. Indeed, the mere fact that 27 such categories have been established confirms that it has been found desirable to eliminate certain types of sales by class because of their tendency to distort the objective reliability which sheer numbers are designed to achieve.

■ Thus, although the County Broad is free to adopt and apply the sales ratio promulgated by the Director in allocating the county tax burden, it need not slavishly fol-

256 (App. Div. 1972), and *Bayonne v. Div. of Tax Appeals,* 49 *N. J. Super.* 230, 239 (App. Div. 1958), as to the difference in approach used on challenges to the Director's ratio.

low the categories of useable sales promulgated by the Director. It may and should depart from its general application in specific situations which significantly affect the tax burden of a particular community.

The critical question here, therefore, is whether the fact that numerous sales of property in Newark are V.A. and F.H.A. financed does, in fact, so inflate the sale prices that they do not reflect true value, and, if so, whether this is true of substantially all cases, and, if not, whether such sales have occurred in sufficient numbers to have a significant impact on the municipality's share of the county tax burden.

In the hearing before the Division of Tax Appeals Newark presented the testimony of real estate experts to the effect that V.A. and F.H.A. financing does significantly distort the sales prices of homes in the city. The experts said that sellers in Newark pay more in points, greater repair and closing costs and higher commissions than their counterparts in suburban areas.

The County Board's expert, on the other hand, testified that while such financing may have an inflationary effect on the sales price, it does not have such a significant effect as to warrant excluding them. He also asserted that other municipalities in the county had sales subject to the same conditions and that discovery of the financing factors involved in all sales would be an insurmountable administrative problem.

We consider this administrative question first. The thrust of this argument is that in order to determine whether and to what extent weight should be given to this factor the Board would be required to make a detailed review of the numerous sales financed by V.A. and F.H.A. mortgages in a number of municipalities. This argument rests on the assumption that every municipality in which there exists a substantial number of transactions will annually challenge the ratios. It also proceeds on the premise that the County Board ought not be required to conduct such activities, and that it lacks the means and personnel to do so.

■ We believe this argument untenable for several reasons. In the first place, the Board is charged with the duty of equalizing aggregates and it cannot escape performance of that duty if a municipality offers credible evidence that use of such sales in the equalization process has the effect of imposing an unfair share of the county tax burden upon it. See *Passaic v. Passaic County Bd. of Taxation,* 18 *N. J.* 371, 390 (1955), and *Willingboro Tp. v. Burlington County Bd. of Taxation,* 62 *N. J.* 203, 218 (1973).

There are, of course, difficulties inherent in making such a study. It will, as the Board points out, necessitate examination of the official records of real estate transactions, including mortgage records. It may also require consulting with lending institutions or such agencies as the V. A. or F. H. A. and the examination of appraisals in their files. But this is precisely what the Board was empowered to do before the enactment of *N. J. S. A.* 46:15–5 *et seq.,* which now requires that deed records show the consideration paid for the property. See *Little Ferry v. Bergen County Bd. of Taxation,* 18 *N. J.* 400, 404 (1955).

The Board has not demonstrated that the task involved is either insurmountable or so administratively difficult that it should not be undertaken. The fact that Newark, in the present case, made a considerable, although by no means extensive, study of a great number of such transactions in the preparation for the appeal in this case, is indicative that the Board's burden is not an intolerable one. Indeed, the secretary conceded that if the Board were supplied with certain information it could screen such sales prior to the statutory date for the completion of the tables.

We turn now to the merits. We are satisfied from the record in this case that a substantial number of sales of residential property during 1971 in Newark were V. A. or F. H. A.-financed and that the prices of the property involved in such transactions were in many cases affected by the factors mentioned above, commonly found present in

such sales, and ordinarily not present in conventionally financed sales.

The record also indicates that a similar situation may prevail, although to a lesser degree, in a few other municipalities. The record further justifies the inference that although V. A. and F. H. A.-financed sales also occur in many suburban communities, the fact that they are so financed does not have the same inflationary impact on such sales.

It appears that the savings which would result if the 65 sales found by the Division to be unuseable are eliminated from the list would be slightly more than $27,000 out of a total of its county tax burden of $24,608,887. This amount would represent a .11% change in Newark's ratio. If all 245 sales objected to were excluded, it is estimated that there would be a reduction of about $85,000 in Newark's tax burden for 1971.

█ Although the percentage change in the ratio may seem relatively small, we are not prepared to say that the amount involved is so insignifiant as to be ignored simply because the formulation of equalization tables is not a perfect process. The County Board has the duty of minimizing, as far as reasonably possible, the unfair distribution of the county tax. *Passaic v. Passaic County Bd. of Taxation, supra,* 18 *N. J.* at 381. We cannot ignore the reality that Newark is particularly hard-pressed financially and that any additional tax burden imposed upon it serves to aggravate its problems.

The County and the Board also argue that, in any event, Newark failed to present adequate proof that V. A. and F. H. A. sales prices were unrepresentative of market value because there was no expert testimony before the Division as to true value. However, it cannot be seriously questioned that the factor of V. A. and F. H. A. sales financing in fact tended to distort the sales price to a considerable degree insofar as Newark is concerned. Moreover, the Board's brief acknowledges that there was at least hearsay evidence to the effect that the sales prices in the challenged transactions were

higher than they would have been if the buyers had arranged for conventional mortgage financing. Thus, it can be fairly argued that there was enough on the hearing before the Division to justify its conclusion that, at least as to the 65 sales eliminated by it, "no fair-minded person could conclude that these sales represented fair market value * * *."

Furthermore, it seems also to have been tacitly assumed that the presentation of formal proof with respect to true market value of individual sales would have served no useful purpose in the face of the existing rule that the fact that sales were financed by V. A. or F. H. A. loans was not a pertinent consideration.

█ Since this is the first time this precise issue has come before an appellate court, and because it has been uncertain whether any proof as to the character of financing was admissible and, if so, its scope and content, we think that justice would best be served by remanding the matter to the County Board in order to afford Newark, within 30 days from the date of this determination, an opportunity to supply any alleged deficiencies in proof as to the 265 challenged sales.

█ We observe that although the other municipalities in the county were notified of the original hearing before the County Board, they did not appear. Consequently, there is no valid basis for the Board's argument that it would be inequitable to grant relief to Newark alone because the effect would simply be to transfer part of its burden to other municipalities who might be able to establish their right to similar relief.

We advert now to the broader issues implicated by our determination and consideration of possible solutions of the practical problems generated by them.

The dimensions of this question are not yet clearly defined. The evidence in this case suggests that it is not confined to Newark but pertains to at least some other municipalities in Essex County. It seems likely also to be an an-

nually recurring problem.[2] A similar, although not identical, issue has also already appeared in cases before the Division, and now on appeal to this court, concerning useability of V. A. and F. H. A.-financed sales in formulating the ratios promulgated by the Director for use in the distribution of school monies.[3] We have no information as to whether the same disparity exists in other counties, especially those in which there are cities which, like Newark, contain large depressed areas.

We suggest that the situation may be one of sufficient magnitude to call for an exercise by the County Board of its administrative powers of investigation over and above those of a *quasi*-judicial nature which are required to decide the present adversary proceeding. Such an investigation on a county-wide basis may well shed light on whether V. A. and F. H. A. financing is a significant factor influencing the sale prices of residential properties in other municipalities and enable the Board to take any necessary measures to see that municipalities similarly affected receive the same treatment. More important, it should enable the Board, through the exercise of its administrative expertise, to develop formulae designed to reduce or eliminate entirely numerous controversies and expensive litigation on the subject.

Such investigation may conceivably result in the conclusion that V. A. and F. H. A. financed sales should as a class be excluded from the list of useable residential sales; that all such sales in certain municipalities or areas thereof should automatically be excluded. Even if such studies do not reveal a basis for such a clear-cut classification, the

[2]An appeal involving Newark's share of the county tax burden under the county apportionment for 1972 is now pending before this court.

[3]This question was raised in appeals by Newark and Jersey City involving the school ratio for the year 1971. The Appellate Division, in an unreported decision, found it unnecessary to reach this issue because of the insufficiency of proof.

Board may be able to establish administrative standards for determining categories by which particular sales should be excluded as nonuseable. Furthermore, it may be able to decide on a statistical basis the merits of the suggestion that all such sales in which the down-payment is less than a specified percentage of the sale price should be automatically excluded as unrepresentative of true value and that all others be the subject of detailed proof by the municipality claiming the sale should be unuseable.

As we have already noted, the same or similar issue has already come to the Division's attention in another county in a tax apportionment, and essentially the same question has been raised in a challenge in Essex and Hudson Counties to the ratios used by the Director for apportionment of school aid. Under the circumstances, and since the same situation may well exist in other counties throughout the State, the Director of Taxation should give consideration to the desirability of undertaking a broader study of the problem and the formulation of administrative procedures and standards which such study indicate. *Passaic v. Passaic County Bd. of Taxation, supra,* 18 *N. J.* at 384.

Reversed and remanded for proceedings in accordance with this opinion.