1 N.J. Tax 15 (1980)
TOWNSHIP OF UNION, PLAINTIFF,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT.
Tax Court of New Jersey.
January 30, 1980.
*16 J. Peter Jost, for plaintiff.
Harry Haushalter, Deputy Attorney General, for defendant (John J. Degnan, Attorney General of New Jersey, attorney).
*17 CONLEY, J.T.C.
On October 1, 1979 the Director of the Division of Taxation issued his table of equalized valuations to be used by the State Commissioner of Education in the calculation and apportionment of state school aid distributions to New Jersey municipalities for the school year 1980-81. Union Township in Hunterdon County filed a complaint with this court pursuant to N.J.S.A. 54:1-35.4 seeking a review of the Director's determination of equalized valuation for the township. The complaint alleged that the Director had improperly excluded a particular sale of property from use in his study of the assessment practices in Union Township and that as a consequence the ratio of assessments to sale prices in the township as developed by the Director was incorrect. The Director's ratio for Union Township was 62.56% and the township urged that the ratio should be higher. The Director informed the court that inclusion of the sale in his computations would change the ratio for Union Township to 65.64%. The township's complaint requested the court to revise and correct the Director's table by incorporating into the appropriate computations the sale that the Director had excluded from his study.
The process by which the Director examines the assessment practices in New Jersey municipalities for purposes of the calculation and apportionment of state school aid distributions was thoroughly discussed in Bayonne v. Division of Tax Appeals, 49 N.J. Super. 230, 139 A.2d 424 (App.Div. 1958). Cf. Willingboro v. Burlington Cty. Bd. of Tax., 62 N.J. 203, 300 A.2d 129 (1973). A municipality seeking the inclusion of a sale omitted by the Director in his study bears a heavy burden of proof because the Director is vested with wide discretion in fashioning the annual table. Kearny v. Division of Tax Appeals, 35 N.J. 299, 304, 173 A.2d 8 (1961). The Legislature has decreed that the presumption of the correctness of the Director's ratio for any taxing district shall not be revised or modified by this court "unless the complainant district shall present proof that upon all the evidence available such ratio ... could not reasonably be *18 justified." N.J.S.A. 54:1-35.4. The primary question in the present case is whether the Director erred in excluding a particular sale on the grounds that it fell within the confines of category 23 of his 27 categories of nonusable deed transactions. See N.J.A.C. 18:12-1.1. Category 23 provides that the following transactions are not usable in determining assessment-sales ratios pursuant to N.J.S.A. 54:1-35.1 et seq.:
Sales of commercial or industrial real property which include machinery, fixtures, equipment, inventories, goodwill when the values of such items are indeterminable.
The sale that Union Township seeks to have included in the Director's study was a sale of a commercial property used as a trucking company depot. The assessment on the property at the time of sale was $702,300. The consideration set forth in the deed was $418,000, resulting in a ratio of assessment to sale price for the single transaction of 168%. The deed contained a schedule with respect to allocation of the sale price of $418,000 which provided as follows:
The parties agree that the purchase price paid for the premises to be conveyed is to be allocated as follows:

Land ............................................... $ 82,500.00
Property and Equipment:
 60,000 pound truck axle scale .................... $ 30,000.00
 2,000 pound platform scale ....................... 45,000.00
 Globe lift ....................................... 8,000.00
 40,000 pound air/oil ram lift .................... 15,000.00
 Overhead service reels ........................... 2,000.00
 Office air conditioning and heating equipment .... 7,500.00
 Carpet ........................................... 2,000.00
 Underground storage tanks ........................ 18,500.00
 Macadam and dolley pads .......................... 100,000.00
 Fencing and motorized gates ...................... 10,000.00
 Outside overhead lighting with timers ............ 6,000.00
 Six 14 ft. X 16 ft. overhead automatic doors ..... 12,000.00
 Fifty overhead doors and Kelly dock levelers ..... 60,000.00
Building ........................................... 19,500.00

The Director's position is that the allocation of the sale price set forth by the parties was arbitrary and not truly reflective of the values of the listed items of property and *19 equipment. Union Township's position is that the sale price of $418,000 was exclusively for the real estate and not for personal property and equipment, except incidentally, despite the explicit language of the deed schedule. The township argues that the sale price is an accurate figure for comparison with the assessment placed on the real property by the township assessor.
One of the principals of the firm that purchased the property testified on behalf of Union Township. He had been involved in negotiations over the purchase price and stated that there had been no discussion between the parties of an allocation between real and personal property. He stated further that allocation of the purchase price had not been a factor in the transaction at all. According to the witness, the allocation set forth in the deed was made by his accountants and the seller. The purchaser testified that his firm had lost the lease it had had at another location for 30 years and was "desperate" to find a new trucking terminal. His concern was to find office space, parking, warehouse facilities and a repair shop. He said that he would have paid the same price if the property had contained none of the individual items on the deed schedule, had had two or three fewer offices and a smaller warehouse. The witness offered the observation that the entire complex his firm had purchased was two or three times what the firm needed. Nonetheless, he felt that he "stole" it from the previous owners because they had been trying to sell it for two years and were carrying the property without a tenant.
The township also offered the testimony of Vincent J. Maguire, certified tax assessor. Maguire stated that the sale should have been usable in the Director's sales-ratio study because there was no indication that the sale was other than an arms'-length transaction. See N.J.A.C. 18:12-1.1. The assessor assessed the property based on construction cost figures made available to him by a former owner and he felt the assessment was appropriate. According to Maguire, Union Township has had a continuing pattern of high ratios of assessment to sale prices for commercial and industrial properties, all of which are located along Route 78. He attributed this to the fact that the *20 highway had not been completed to the metropolitan area as anticipated years ago and that as a result the demand for and thus the value of commercial and industrial property had not increased as fast as for other properties in the township.
The Director presented limited testimony of a representative who had examined the sale in question. Primarily, the Director relied upon cross-examination of the township's witnesses and the introduction of documentary evidence pertaining to the sales ratio study and the particular class 4 sale involved in this case.
The Supreme Court considered the Director's category 23 in Kingsley v. Division of Tax Appeals, 40 N.J. 338, 192 A.2d 561 (1963). In that case a $600,000 industrial sale was allocated by the parties to the transaction as follows: $400,000 for real estate; $150,000 for movable manufacturing equipment; and $85,000 for inventory. After a remand, the court concluded that the parties had indeed agreed upon $400,000 as a fair market price for the real estate alone. This finding as to the intent of the parties was supported by the testimony of two expert real estate appraisers that the real estate had a value of $400,000. In short, all the evidence supported the allocation made by the parties.
In the present case Union Township argues not that the allocation set forth by the parties themselves should be adopted but that the allocation was arbitrary and meaningless and should be disregarded by the court. The township argues that the real property alone was worth at least $418,000 because the purchaser "stole" it at that price. The court cannot accept this contention. A principal of the purchaser testified that his firm would have paid that price for less land and smaller buildings and did not need any of the machinery or equipment. If the sale price was such a bargain, the transaction bordered on being a distress sale that would not be usable in any event under category 26. However, the allocation made by the parties as part of the deed cannot be ignored. Neither plaintiff nor defendant urges the court to accept the specific allocations set forth, yet they must have been significant to the parties for *21 some reason. The court cannot on the basis of this record ascertain what the purpose of the allocation was or whether a different allocation could have been made. No competent proof was submitted with respect to the value of the real estate alone. No competent proof was offered with respect to the intention of the seller, who prepared the allocation schedule with the purchaser's attorney. The court finds that the sale in question falls within category 23 of the Director's nonusable deed transactions and was properly excluded from the Director's study of assessment practices in Union Township.
A subsidiary issue developed at trial with respect to whether some or all of the "property and equipment" listed in the deed schedule was real property rather than personal property. On one hand, the Director contends that at least most of the listed items were personal property under the standard enunciated in Bayonne v. Port Jersey Corp., 79 N.J. 367, 399 A.2d 649 (1979). Such a designation would be in accord with the characterization of the items by the parties and would leave the earlier part of this opinion undisturbed. On the other hand, the township contends that almost none of the listed property is personalty so that the entire sale price should be treated as allocable to real property. Such a conclusion would obviate the need for consideration of category 23. The court is satisfied that a sufficient number of the larger items were personalty within the intent of category 23. The testimony of the purchaser was clear that almost all of the scheduled items could be removed by unbolting them from the building or from a supporting frame without causing any harm to the real property. This would be true of the 60,000-pound truck axle scale, the 2,000-pound platform scale, the Globe lift and the 40,000-pound air/oil ram lift. The township concedes that the standard of the Bayonne case is controlling for purposes of this litigation, and the court finds that the items specified in this paragraph were personalty within the parameters established by Bayonne insofar as the language of category 23 is concerned. This is not to say, however, that the court is hereby expressing an opinion as to the implications of the Bayonne case as applied to the *22 assessment of property as opposed to the administration of the Director's sales-ratio study.
The township has raised another issue that deserves mention. This is that the Director did not use any class 4 sales in his study of the township's assessing practices. The Director used the class 2 (residential property) ratio of 53.56% to develop a true value of class 4 properties in the township. As a result, the aggregate assessed value of class 4 property of $5,516,653 was equalized by application of the 53.56% factor. The 1979 true value for class 4 properties was determined to be $10,299,950. The township's assessor testified that application of the 168% ratio from the sale in question would have resulted in a 1979 class 4 true value for the township of $3,283,500. The lower true value would accrue to the township's advantage in the calculation and apportionment of state school aid distributions and very likely in the apportionment of the costs of county government. See Kingsley v. Division of Tax Appeals, supra, 40 N.J. at 341, 192 A.2d 561. The assessor also observed that the class 4 ratio developed by the Director for use in the prior year's table of equalized valuations had been 243.11%, and that the change to 53.56% for 1979 was too abrupt because property values do not in reality change so fast in one year's time.
We understand that the Director's use of a class 2 ratio in the absence of any usable sales in another class of properties has been his practice over the years, yet it appears that this practice has never been reviewed by our courts. The obvious reason for the use of the class 2 ratio is that there are invariably a greater number of sales of residential property than of any other type of property in a municipality during any sales sampling period. Use of a greater sampling of sales tends to produce a more reliable analysis of assessment practices in the municipality than would a study of fewer sales. In the case of Union Township there were 48 usable sales in the Director's one-year study for the period from July 1, 1978 to June 30, 1979. Of these 48 sales, 44 were of residential property and four were of vacant land (class 1). The ratio developed from the use of the four class 1 *23 sales was 42.39%. The Director applied the 53.56% residential ratio developed from 44 sales not only to the aggregate assessments of class 2 properties but also of class 3 (farm) and class 4 properties. The Director routinely applies the class 2 ratio to farmland assessed under the Farmland Assessment Act (N.J.S.A. 54:4-23.1 et seq.) because the lower assessments on such properties are not comparable to sales prices and any resulting assessment-sales ratio would be meaningless. See N.J.A.C. 18:15-9.1(c). Thus, in the case both of qualified farmland and of an absence of usable sales for class 1 or class 4 properties, the Director's practice is to use the most reliable current ratio of assessment to sales in a municipality in order to determine a hypothetical true value for each class of property.
Union Township suggests that the Director should have used the prior year's class 4 ratio of 243.11% rather than the 1979 class 2 ratio of 53.56% to determine true value for its class 4 ratables. The township's approach might also be reasonable in appropriate circumstances, but it is not the function of this court to supplant the methodology of the Director with another methodology unless the Director's ratio "could not reasonably be justified." N.J.S.A. 54:1-35.4. As the Appellate Division said in Bayonne v. Division of Tax Appeals, supra,
The task imposed upon the Director is one of great administrative complexity, involving, each year, literally scores of thousands of subordinate determinations. So long as his methods are fair and reasonably related to the ultimate objective of achieving fairly accurate approximations of the ratios between true and assessed valuations in each taxing district (ratios which, of course, can never be known with certainty), his ultimate determination as to an average ratio for a given municipality cannot be challenged merely because a different method in any part of the complex process could be equally reasonably defended. [49 N.J. Super. at 239, 139 A.2d at 429.]
In the present case, the Director used for his class 4 ratio the ratio of 53.56% derived from the most numerous sales sampling available to him for the current year; the only other current sales sampling produced an even lower ratio of assessment to sale price (42.39%) than the residential ratio; and the 1979 average ratio of 62.56% developed by the Director for Union Township was consistent with the Director's 1978 average ratio of 69.77% in that municipal ratios of assessment to sale price *24 tend to decrease each year in our inflationary economy. In any event, Union Township made no showing that the one-year class 4 ratio of 243.11% for the prior year was more reliable than the residential ratio for the current year. It may well have been that the 243.11% ratio was an aberration.
Is it significant that the Director's methodology minimizes the abrupt changes in a ratio which might otherwise occur because of a paucity of sales. The Director's 1979 true value for Union Township, developed in part by use of the class 2 ratio for class 4 assessments, was averaged with his 1978 adjusted true value that he had developed in part by use of the 243.11% ratio for class 4 assessments. Accordingly, the Director by his two-year averaging process continued to use the high ratio for class 4 sought by Union Township, but with a diminished effect because of the remoteness of the prior year's data. See Newark v. Essex Cty. Bd. of Tax., 124 N.J. Super. 76, 79-81, 304 A.2d 761 (App. Div. 1973), certif. den. 63 N.J. 566, 310 A.2d 480 (1973). In short, Union Township has not shown that use of a class 2 ratio in the absence of a class 4 ratio "could not reasonably be justified." N.J.S.A. 54:1-35.4. On the contrary, the Director's practice is unquestionably reasonable and is sustained.
One final issue was raised by Union Township. It objected to the fact that the Director initially determined the truck depot sale to be nonusable as a distress sale pursuant to category 26 and that he then changed the basis for his determination in reliance upon category 23. This objection has no merit. The Director is obligated to continue his inquiry into the usability of any sale brought into question in order to evaluate fully whether the transaction should be used. Kearny v. Division of Tax Appeals, supra. As a result of his investigation, the Director not only may but should continue to advance reasons for the usability or nonusability of a sale as his awareness of the factual circumstances in connection with the sale become known. The same opportunity exists for the taxing district.
The Clerk of the Tax Court shall enter judgment affirming the Director's 1979 table of equalized valuations as it pertains to Union Township, Hunterdon County.