LARIO, J.T.C.
West Deptford has filed an appeal from the 1983 Table of Equalized Values promulgated by the Gloucester County Board of Taxation, complaining that the ratio of 93.33% assigned to it is incorrect.
Plaintiff challenges the use by the county board of two sales of vacant land, claiming they should not have been included in the sales ratio study utilized to develop plaintiff’s ratio in the county equalization table because in neither sale was the purchaser a “willing buyer.”
Plaintiff further contends since these two sales, which it alleges are unusable, were the only vacant land sales in the study, the county board is required to apply the ratio for Class *82 2-Residential properties to equalize the vacant land assessments in accordance with the standards adopted by the Director.
The first sale attacked by plaintiff was from Linzner, Inc. to Nokhodian for Block 58, Lot 3, which was assessed at $5,900 and sold for $13,900, yielding a ratio of 42.45%. Plaintiff presented the testimony of both the grantor’s principal and the grantee. Linzner testified that his corporation specialized in home building. In 1980 he purchased a large tract of land, upon which was located an old home and included this lot, for the total price of $34,000. He subdivided the property into four lots, built homes on three of the lots and sold the fourth lot to Nokhodian for $13,900. He stated that in establishing the sales price he calculated the profit he would have made on the land had he built a house upon it and sold it.
Nokhodian testified that his wife had previously purchased from Linzner, Inc. the lot and home next to the subject property and he and his wife occupied it. After moving in he decided he would like to purchase the adjoining lot to build a home thereon sometime in the future for his parents. He thereupon advised Linzner of his desire and they agreed on a sale at the purchase price of $13,900. He understood from representations made to him by Linzner that included in the purchase price was the seller’s anticipated profit as heretofore described.
The second sale was from McGuinnes to Widen conveying Block 342, Lot 14, which was assessed at $18,000 and sold for $35,000, yielding a ratio of 51.43%. Mrs. Widen, who with her husband purchased the property from Mr. & Mrs. McGuinnes, testified they were interested in residing in this particular section of West Deptford Township, which she considers to be a very desirable residential area and that in this part of town there are not too many vacant home lots available for sale. In riding through this area she noticed a lot with a “for sale” sign which listed a telephone number. She telephoned the number and spoke with Mrs. McGuinnes, who advised her that the sales price was $36,000. This conversation occurred in October or November, 1981. She contacted the municipality and as *83 eertained that the “value” of the property was $18,000. In May, 1982 they purchased the property for $35,000. She testified that she believed the purchase price they paid for the lot was more than it was worth.
Each county’s equalization table is prepared annually pursuant to N.J.S.A. 54:3-17; -18. N.J.S.A. 54:3-17 requires that:
Each county tax administrator shall annually ascertain and determine, according to his best knowledge and information, the general ratio or percentage of true value at which the real property of each taxing district is in fact assessed according to the tax lists laid before the board. On or before March 1 of each year, he shall prepare and submit to the county board an equalization table....
N.J.S.A. 54:3-18 directs that each county board of taxation shall (a) review the equalization table prepared pursuant to N.J.S.A. 54:3-17; (b) determine the accuracy of the ratios and (c) confirm or revise the table accordingly. The Legislature has not specified any particular method to be utilized by a county board in arriving at its final county equalization table. Any reasonable and efficient method may be used. Willingboro v. Burlington Cty. Bd. Tax., 62 N.J. 203, 220, 300 A.2d 129 (1973); Woodbridge v. Middlesex Cty Bd. Tax., 96 N.J.Super. 532, 536, 233 A.2d 650 (App.Div.1967); Perth Amboy v. Middlesex Cty. Bd. Tax., 91 N.J.Super. 305, 308, 220 A.2d 119 (App.Div.1966), certif. den. 48 N.J. 112, 223 A.2d 491 (1966).
In adopting its final table the Gloucester County Board utilized the ratios certified by the Director of the Division of Taxation in his October 1, 1982 Table of Equalized Valuations prepared for school aid purposes, referred to as the School Aid Table and also as the Director’s Equalization Table, for all nonrevalued, nonreassessed taxing districts within the county. The 93.33% ratio assigned to West Deptford was based on the ratio reflected in the aforesaid table. The table is prepared as required by the State School Aid Law of 1954. L.1954, c. 85, as amended by N.J.S.A. 18A:58-1, et seq. Pursuant thereto, N.J.S.A. 54:1-35.1 directs the Director to annually promulgate a table of equalized valuations showing for each taxing district in *84 the State the average ratio of assessment to true value of all its real property.
To aid him in the ascertainment of this ratio, the Director, as was pointed out by our Supreme Court in Willingboro, supra, developed a study of real estate sales within each municipality:
... [U]nder compulsion of the requirements of the State School Aid Act of 1954, L.1954, c. 85, N.J.S.A. 18:10-29.30, et seq. (now N.J.S.A. 18A:58-1, et seq.; 58-4) which provides for distribution to school districts of state financial aid determinable to some extent by the aggregate of the equalized realty assessments of the particular municipality[3] the State Division of Taxation developed a useful system of determining fairly reliable municipal ratios of aggregate assessments to aggregate equalized true valuations based on analyses of prices in sales of property recorded. Such analysis entailed screening out such sales as were for various reasons not reliable indices of market value.
The School Aid Table is used not only in apportioning state school aid to each municipality, but the information secured therefrom is also utilized for additional purposes by the Director and other governmental agencies. Although the county boards are required by N.J.S.A. 54:3-18 to independently adopt the county equalization table, our Supreme Court has determined that the Director’s study and tables are a proper foundation for the data utilized by a county board in promulgating its county equalization table for the following years. Willingboro v. Burlington Cty. Bd. Tax., supra, at 227, 300 A.2d 129; Greenwich Tp. v. Gloucester Cty. Bd. Tax., 47 N.J, 95, 99, 219 A.2d 507 (1966).
The Director does not promulgate his equalization table to control distribution of the county tax burden. The obligation to equalize assessments to that end rests on the County Tax Board. N.J.S.A. 54:3-17, 18. However, since the County Board follows the same general method in determining average municipal ratios, as a matter of practice the Director’s table is accepted ordinarily as prima facie correct, and therefore, usable by the Board in fulfilling its statutory obligation. [47 N.J. at 99, 219 A.2d 507].
The method employed by the Director in preparing his study, which basically has been used by him since 1954, was described *85 by our Supreme Court in Greenwich Tp. v. Gloucester Cty. Bd. Tax., supra,[1] wherein it stated:
In preparing his table the State Director follows a convenient and uncomplicated system. All sales of real estate in each municipality of the county during the year being studied are reported to him. The sale price as indicated by the revenue stamps [2] on the deed is treated as representing true value. The ratio of assessment to true value is then determined by comparison between the sale price and the assessed value. The process is further refined by classifying the sales into four categories: (1) vacant land; (2) residential; (3) farm; (4) “other” (which includes commercial, industrial, apartments, etc.), and the ratio of assessment to true value is determined for each class. Moreover, statistical reliability is sought by a further screening of all sales. On the basis of experience and study the Director has established 27 categories of non-usable sales. If a sale falls into one of these categories it will not be utilized in the equalization process because it falls short in some respect of meeting the true value test, i.e. a sale between a buyer willing but not obliged to buy, and a seller willing but not obliged to sell, [at 98-99, 219 A.2d 507],
The current mathematics of the Director’s ratios was outlined in Willingboro Tp. v. Burlington Cty. Bd. Tax., supra, as follows:
The current aggregate assessed valuations of the properties sold in each class are divided by the aggregate sales prices, yielding a ratio for the class. Each class ratio is divided into the aggregate assessed valuations for the class, yielding aggregate putative true valuations for the respective classes. These aggregates are added together, yielding the total putative true valuations for the district. These are ordinarily the operative figures for school aid distribution purposes. The aggregate assessments of the same tax and calendar year as the year of the Director’s October 1 tables [footnote omitted] are divided by the aggregate equalized true valuations last mentioned; this is called the average weighted ratio or weighted ratio (... hereinafter ... “weighted ratio”...). Beginning with the Director’s 1969 school aid tables, another ratio was developed, which we denominate the “final average ratio” (sometimes called “average ratio”). This is determined as follows: (1) take the aggregate equalized true valuations for the current year (as to the present case, ... [1982]) and average them with the final aggregate true valuations certified in the Director’s table for the prior year (i.e., .. . [1981] as to the present ease), the resulting figure representing the final certified true valuation for the current year; (2) the aggregate assessed valuations of the current year are divided by the final certified true valuations to produce the “final average ratio”, [at 211-212, 300 A.2d 129].
*86 By adopting the Director’s study the county board accepted the Director’s determination that the purchase price of each of the two sales in issue represented true value. “True value” for ad valorem tax purposes has been defined by our Legislature as such price as in the assessor’s judgment the property “would sell for at a fair and bona fide sale by private contract.” N.J.S.A. 54:4-23. This definition has been interpreted by our Supreme Court to be synonymous with “market value.” Newark v. West Milford Tp., 9 N.J. 295, 303, 88 A.2d 211 (1952). In essence it is the value it has in exchange for money. Hackensack Water Co. v. Tax Appeal Div., 2 N.J. 157, 163, 65 A.2d 828 (1949).
To achieve his goal of determining the total true value of real estate within a municipality the Director eliminates from his sampling all sales which do not reflect market value. A current definition of market value is:
The most probable price in cash, terms equivalent to cash, or in other precisely revealed terms, for which the appraised property will sell in a competitive market under all conditions requisite to fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress. [The American Institute of Real Estate Appraisers, The Appraisal of Real Estate (8 ed 1983) at 33].
In determining which sales should be eliminated, the sale is examined to ascertain whether it falls within one of the Director’s 27 categories for nonusable deed transactions. N.J.A.C. 18:12-1.1(a). Plaintiff maintains that the two sales in issue are nonusable and should be excluded from the study on the basis of category number 26, which deems nonusable:
Sales which for some reason other than specified in the enumerated categories are not deemed to be a transaction between a willing buyer, not compelled to buy, and a willing seller, not compelled to sell....
The county board accepted each of the two sales as being between a willing buyer and a willing seller. It is well established that a county board’s determination in its adoption of an equalization table carries with it a presumption of correctness. Kearny v. Tax Appeals Div., 35 N.J. 299, 305, 173 A.2d 8 (1961). This presumption stands until overcome by sufficient, competent evidence which must be definite, positive and certain *87 in quantity and quality. Perth Amboy v. Middlesex Cty. Bd. Tax., supra, 91 N.J.Super. at 309, 220 A.2d 119. The municipality has the burden of establishing through adequate evidence that the ratio ascribed to it is either incorrect or unjust and that there has been imposed on the municipality a substantially excessive share of the county tax burden. Willingboro, supra 62 N.J. at 220, 300 A.2d 129; Kearny, supra at 304; Atlantic City v. Atlantic Cty. Bd. Tax., 2 N.J.Tax 30, 35 (1980), aff’d o.b. 4 N.J.Tax 685 (App.Div.1982), certif. den. 93 N.J. 250,460 A.2d 659 (1983).
Plaintiff attacks the above two sales claiming that neither of the purchasers was a willing buyer. A willing buyer of real estate is a person who is fully informed of all the facts concerning the subject property, has full knowledge of all of the uses and purposes for which the property could be adapted and is capable of being used, is motivated by self-interest and is acting prudently, and not under abnormal pressure to buy. The Appraisal of Real Estate, supra at 33.
In the first sale herein the seller testified that he financed approximately 50% of the original tract’s price at an interest rate which he recalled to be 13%, in addition to which he paid approximately two points as a mortgage premium. After receiving permission to subdivide the property into four separate lots he demolished the old home located thereon, removed trees, leveled the property at a cost of $2,000, and installed water lines at a cost of about $3,000. Nokhodian testified that since $900 of the purchase price was financing the net sales price was $13,000.
Linzner’s acquisition and development cost for the entire tract was at least $40,000, not including interest payments and incidental expenses. The lot sold to Nokhodian was a comer lot, possibly more valuable than the other three; however, assuming all four lots were equal in value its total cost was in excess of $10,000. Not included therein is the value of the developer’s services in securing the subdivision, clearing the property and installing the site improvements, nor an entrepreneur’s profit. The buyer testified that he felt the seller was entitled to a fair *88 profit on his ground. This lot was the fourth and only unsold lot of the subdivision. The lot was obviously in a competitive and open sales market. Both the seller, who developed the four lots and sold three, and the buyer, who purchased and lived on the adjoining lot, were knowledgeable concerning the uses for which the lot could be adapted and neither party was under any undue duress to sell or buy. A desire to purchase an adjoining lot to build a home thereon in the future for a relative does not create a person “compelled to buy.” Whether the seller has earned a large profit or sustained a huge loss, standing alone, does not disqualify a sale from the sampling. From the facts produced plaintiff has failed to establish that the sale price was not a fair sale indicative of its market value. I find that the seller and purchaser met all of the requisites of a willing seller-willing buyer. Therefore, I conclude that the plaintiff has failed to establish that this sale is nonusable.
The sole evidence presented concerning the second sale was the testimony of Mrs. Widen which, in effect, was solely that the sellers were asking $36,000 for a property which was assessed at $18,000 and it was finally sold for $35,000. The purchaser testified that between October or November 1981 and May 1982 she contacted the seller on approximately ten occasions, at which times she attempted to negotiate a lower price. She finally agreed to purchase the property for $35,000. There is no allegation of fraud or deceit by the sellers. There is nothing in the record to indicate that the purchaser was not a knowledgeable and willing buyer. From her testimony it is obvious she was extremely familiar with the neighborhood and the uses to which the land could be put. Their home is presently in the process of being built and there is no indication that they have been misinformed concerning the land’s use or that they are dissatisfied with their purchase. Mrs. Widen appears to be a reasonable and an intelligent person. At the time she negotiated this agreement she was under no compulsion to buy. She did not act hastily. She acted prudently in securing facts concerning the property. She had the freedom to and did in fact negotiate with the seller for a period of six months; and she *89 finally, voluntarily, entered into an agreement of sale. It cannot be assumed, as the purchaser implied, that the property’s true value and its assessment were identical. There is no proof to establish that the true value of the property was other than the purchase price negotiated between the parties. True value is the consideration established between a willing seller and a willing buyer in the marketplace. I find that the purchaser in this sale has met all of the requirements of a willing buyer. Based upon the standards adopted by the Director I conclude that plaintiff has failed to establish that this sale to Mr. and Mrs. Widen is nonusable.
In the Director’s system the true value of the real property in each of the four classes of property is calculated by dividing the total assessed value of each class (as reported to him earlier by the assessor) by the class ratio. However, in the event no usable sale occurs during the sampling period within any of the other three classes, the assessment-sales ratio determined for Class 2-Residential property is applied to the ratables listed for that non-sale Class. Union Tp. v. Tax. Div. Dir., 176 N.J.Super. 239, 1 N.J.Tax. 15, 422 A.2d 803 (1980); Local Property and Public Utility Branch, New Jersey Division of Taxation, Handbook for New Jersey Assessors, (2 ed 1980) § 1002.43; Cf Greenwich Tp. v. Gloucester Cty. Bd. Tax., supra.[3] Since I have concluded that the two sales of Class 1 property were properly utilized in the Director’s sampling, plaintiff’s claim that the Class 2 ratio must be applied to the Class 1 ratables is of course untenable. In Greenwich Tp. v. Gloucester Cty. Bd. Tax., supra, *90 the Supreme Court affirmed the use of a single sale within a class to determine a class’ total true value; therefore, two sales within a class are certainly sufficient.
Plaintiff has failed to offer adequate evidence that the county equalization ratio of 93.33% assigned to it for the tax year 1982 is either incorrect or unjust, or that there has been imposed upon it a substantially excessive share of the county tax burden; therefore, plaintiff’s complaint is dismissed.

 The greater the equalized valuations, the less (in general) the state aid. Willingboro v. Burlington Cty. Bd. Tax., supra, 62 N.J. at 209, 300 A.2d 129.

The basic method was also detailed in Bayonne v. Tax App. Div., 49 N.J.Super. 230, 139 A.2d 424 (App.Div.1958) and as it was further refined by the Director in 1969, in Willingboro v. Burlington Cty. Bd. Tax., supra, 62 N.J. at 212, 300 A.2d 129.

Since revenue stamps have been abandoned, the Director now accepts as true value the price contained in the deed’s affidavit of consideration.

In Greenwich because there was only one sale in the Class 4 category the county board disqualified the sale, leaving no sale in Class 4; therefore, in accordance with the Director’s practice it applied the Class 2 ratio to Class 4 ratables. The Division of Tax Appeals reversed, which reversal was affirmed by the Supreme Court. The basis for the reversal by the Division of Tax Appeals was not that the county board had improperly followed the Director’s practice of using the Class 2 ratio for a class which had no sales, but instead was founded upon the improper disqualification of the single Class 4 sale. In determining that the Class 4 sale was bona fide the Supreme Court, in affirming the Division, held that the assessment-sales ratio of that sale should have been used.