89 N.J. Super. 549 (1965)
215 A.2d 769
WILLIAM KINGSLEY, DIRECTOR OF THE DIVISION OF TAXATION IN THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, APPELLANT,
v.
CITY OF BAYONNE, IN THE COUNTY OF HUDSON, AND DIVISION OF TAX APPEALS IN THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENTS.
CITY OF BAYONNE, IN THE COUNTY OF HUDSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT,
v.
HUDSON COUNTY BOARD OF TAXATION AND THE DIVISION OF TAX APPEALS IN THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1965.
Decided December 21, 1965.
*552 Before Judges KILKENNY, SULLIVAN and LEONARD.
Mr. Elias Abelson, Deputy Attorney General, argued the cause for appellant William Kingsley, Director (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
Mr. James P. Dugan argued the cause for appellant City of Bayonne.
The opinion of the court was delivered by KILKENNY, J.A.D.
The Director of the State Division of Taxation compiled a "Table of Equalized Valuations," pursuant to N.J.S.A. 54:1-35.1, which showed that as of October 1, 1963 the ratio between the sales prices paid for real estate sold in the City of Bayonne and the assessed valuation of that real estate was 36.20%. The table was prepared for school aid purposes.
Bayonne challenged the correctness of the ratio before the State Division of Tax Appeals, particularly claiming prejudice in the exclusion by the Director of two sales of real estate. One was a sale by Samuel Feldman and Rose Feldman, his wife, to Eldorado Terminals Corporation, by deed recorded on April 23, 1963. At the hearing before the State Division, the Director conceded that this sale should not have been excluded from consideration and modified the table accordingly. We are not concerned herein with the correctness of that modification.
The other sale, with which we are concerned, was a conveyance of 13.0551 acres from Humble Oil & Refining Company to Hunt Foods and Industries, Inc., for a price of $70,000, by deed dated July 9, 1962 and recorded August 24, 1962. Since this sale occurred beyond June 30, 1962, it was *553 not considered by the Director in preparing the 1962 tax equalization table, but was considered in computing the table for 1963. This sale was declared by the Director to be nonusable because the parcel sold was only a part of a much larger tract of land, had not been separately assessed, and constituted a so-called "split-off" which, under the Director's rules, made the sale nonusable.
There had been improvements on this 13-acre tract, but they had been demolished prior to the conveyance to Hunt Foods in 1962, so that the land was vacant and unimproved at the time of the conveyance. Humble owned 325 acres more or less, in addition to the parcel sold, which were adjacent to this parcel bought by Hunt Foods. Until January 8, 1963, when an apportionment was made of Humble's holdings to show the separation of the 13.0551 acres sold to Hunt Foods, the Bayonne tax list showed that the subject property was not separately assessed, but was included as part of a single assessment against the entire Humble tract.
Bayonne contended before the State Division, and the proofs support this contention, that the Humble tract had been assessed for many years as a unit on the tax list of Bayonne, but there was a firmly established policy, because of litigation and negotiation between the city and Humble, by which the land in this area was assessed at $25,000 an acre if it lay south of the Central Railroad tracks, and at $20,000 an acre if it lay north of the tracks. This valuation persisted after the sale to Hunt Foods, so that after the apportionment of the 13.0551-acre tract, it was separately assessed at $261,100, being $20,000 an acre, because this parcel was north of the railroad tracks. Humble's tax assessment on the remainder of the property retained by it was then reduced by the same amount.
The State Division of Tax Appeals ruled on January 10, 1964 that the sale of the 13.0551-acre parcel was a usable sale in preparing the table of equalized valuations and belonged in classification number I, set up by the Director, as a sale of "vacant land."
*554 The Director of the Division of Taxation appealed from that part of the determination of the Division of Tax Appeals, which held that the sale from Humble to Hunt Foods was a usable sale in the preparation of the "Table of Equalized Valuations." Bayonne cross-appealed from that part of the Division's decision, which classified the sale as one involving vacant land.
On March 24, 1964 the Hudson County Board of Taxation, in computing the percentage of Bayonne's contribution to the cost of the county government, adopted, over the city's objection, the Director's table, as revised by the Division of Tax Appeals. Thereupon, Bayonne appealed to the Division of Tax Appeals this ruling by the county tax board, claiming that there was an erroneous classification of the sale under the Director's classification No. I as one of vacant land. The city contended that the 13.0551 acres sold had been used for heavy industrial purposes prior to the demolition of the structures thereon and sale to Hunt Foods, the property was zoned for a heavy industrial use, and, therefore, should have been treated as a sale of industrial property under classification No. IV. Bayonne maintains that such an erroneous classification would substantially increase its contribution to the cost of the county government to the extent of approximately $435,446 for the fiscal year 1964.
The Division of Tax Appeals, in deciding Bayonne's appeal from the ruling of the Hudson County Board of Taxation, reaffirmed the position taken by it in reviewing the propriety of the Director's table, that the Humble sale to Hunt Foods was a sale of vacant land and not industrial property, as claimed by the city. Thereupon, Bayonne filed a separate appeal from this further judgment of the Division of Tax Appeals.
Because common questions of law and fact are involved, the Director's appeal and the city's cross-appeal in that action, as well as the city's appeal from the Division's determination as to the action of the Hudson County Board of Taxation, were ordered consolidated and were argued at the same time. Accordingly, *555 we treat the issues as jointly applicable to all appeals.

I.
The basic contention of the Director is that the city failed to prove that he abused his discretion in his determination that the Humble sale was nonusable.
For the purpose of promulgating a "Table of Equalized Valuations" mandated by N.J.S.A. 54:1-35.1, the Director uses a sales-assessment ratio technique adequately described in City of Bayonne v. Division of Tax Appeals, 49 N.J. Super. 230 (App. Div. 1958). The Director must determine as precisely as possible two important figures: The sum of the sales prices of lands sold during a given period and the sum of the assessed valuations of those lands. By regulations adopted by him, the Director attempts to screen out in a summary fashion those sales in which the sales price or the assessment are not accurately ascertainable, so that no undue distortions appear in the sums. Certain sales are deemed to be nonusable. Thus, one of the Director's rules provides:
"6. Sales of property conveying only a portion of the assessed unit, usually referred to as apportionments, split-offs or cut-offs; for example a parcel sold out of a larger tract where the assessment is for a larger tract."
The sale in question was excluded by the Director under this Rule 6. And it was this exclusion which prompted the appeal by the city to the Division of Tax Appeals.
N.J.S.A. 54:1-35.4 provides that in any proceeding on appeal to the Division of Tax Appeals from the promulgation of the table of equalized valuations, the assessment ratios are to be presumed correct and
"* * * shall not be revised or modified by the Division of Tax Appeals unless the complainant district shall present proof that upon all the evidence available such ratio or ratios could not be reasonably justified."
*556 The burden, therefore, is on Bayonne to show that the exclusion of the Humble sale could not be reasonably justified.
The Director's position as to the usability or not of a particular sale is that, where the sale appears on its face to be a conveyance of only a portion of an assessed unit, "a parcel sold out of a larger tract where the assessment is for a larger tract," as defined in the Director's Rule 6, the Director is required to investigate only facts of record and not evidence obtainable from some nonrecorded source. Here, a field investigator, upon being told that the land was assessed at $20,000 an acre north of the Central Railroad tracks, searched for independent proof of this fact in the records of the tax assessor. He testified that he found none and recommended that the sale not be included in computing the ratio. The Director followed this recommendation.
The city's position is that, under Town of Kearny v. Division of Tax Appeals, 35 N.J. 299 (1961), and Kingsley v. Division of Tax Appeals, 40 N.J. 338 (1963), even though a sale appears at first glance to be a "split-off," if upon further investigation the assessment of the parcel sold can be ascertained, fairness and equity to the municipality require that the sale be used. In the instant case, a simple arithmetical computation would have verified that the acreage north of the tracks was, for many years, assessed at $20,000 an acre and that south of the tracks at $25,000 an acre. The assessor's maps showed the acreage. Multiplying the number of acres respectively north and south of the tracks by the $20,000 and $25,000 per acre factors, and then adding the two results would demonstrate the long-established local assessment practice as to the involved acreage. This assessment of $20,000 per acre as to the acreage north of the tracks could be readily corroborated by observing the assessor's record showing the separate assessment of $261,100 levied on the 13.0551 acres sold, made on January 8, 1963, when the lands were apportioned for assessment purposes.
In the Kearny case, supra, the Supreme Court pointed out that, although sales of portions of a larger tract assessed as *557 a unit may be technically "split-offs," the Director's "inquiry does not end at that point." As the court expressed it more fully:
"If investigation shows clearly that in fairness and equity to the municipality involved, and in the interest of a closer approach to inter-municipal equalization, the transactions should be regarded as ordinary sales and therefore usable in the ratio calculation, exclusion as split-offs cannot be supported as a reasonable exercise of discretion." (35 N.J., at pp. 313-314)
In Kingsley v. Division of Tax Appeals, supra, the rule was reiterated as follows:
"Our determination in this unusual instance does not impair the basic discretion vested in the Director of the Division of Taxation in preparing equalization tables. * * *
Equity and justice to a particular municipality and its taxpayers may require occasionally a somewhat more specific study of the particular sale or sales by both Director and County Tax Board. * * * Where effects of such magnitude are vested upon local taxpayers as the result of an ex parte or informal application of a categorical rule to a few sales, more detailed study and evaluation of them should be engaged in by the Director upon request of the interested municipality for a hearing on the matter." (40 N.J., at pp. 345-346)
As to the Director's argument that this additional investigation would make his task too burdensome, we answer in the words of the Supreme Court:
"Justice demands addition of that task to the equalization process, and we doubt that its assumption will be an unduly burdensome one." Ibid., at p. 346.
We concur in the conclusion reached by the Division of Tax Appeals that fairness and equity to Bayonne required inclusion of the Humble sale of the 13.0551 acres in the computation of the ratio. The assessed valuation of this parcel was readily ascertainable by recourse to the public records and a simple arithmetical calculation. That more specific study was required to determine its usability was no basis for its exclusion under the facts and circumstances herein.

*558 II.
In his brief and at oral argument the Director contended initially that any error in his "Table of Equalized Valuations" was without prejudice to Bayonne insofar as distribution of school aid is concerned, because Bayonne is a "minimum aid district" for school aid distribution and would be unaffected by the ratio. Bayonne concedes that it would not suffer any loss in the allocation of ordinary school aid. We were subsequently informed by the Director on the day of oral argument, and later in a letter, that an error in the ratio by reason of the Humble sale could adversely affect Bayonne in school aid under the capital foundation program, but the loss in building aid allowance would be only $991.
However, it is undisputed that error in the ratio, adopted by the county board of taxation to determine Bayonne's contribution to the cost of the county government, would have a substantial adverse effect, so far as Bayonne is concerned, as noted above. Accordingly, the issue is not merely academic.

III.
We next consider the city's appeal and cross-appeal in which it contends that the Division of Tax Appeals erred in classifying the Humble to Hunt Foods sale as a sale of "vacant land."
It is undisputed that this parcel was in fact vacant land at the time in issue, although there had previously been structures on it which had been used for industrial purposes. The structures had been demolished prior to the sale to Hunt Foods. The land was and is zoned for heavy industrial purposes.
The Director classifies land sales as (1) vacant land, (2) farm land, (3) residential land, or (4) other, including commercial, industrial, apartment houses, etc. The vacant land category, as defined by the Local Property Tax Bureau of the Division of Taxation, encompasses:
*559 "* * * Land itself above and under water in its original, indestructible, immobile state. It is idle land, not actively used for agricultural or other purposes. It is unused acreage; * * *." Handbook for New Jersey Assessors, § 1002.2, at p. 169.
Bayonne argues that instead of creating a separate category of vacant land, the Director should include vacant land in categories according to the past and prospective use. Thus, land on which only industrial uses are permitted should be included within the industrial category regardless of the fact that, at the time of the sale, it was devoid of structures.
Bayonne is charged with the responsibility of showing the Division of Tax Appeals that the Director's classification cannot be "reasonably justified." N.J.S.A. 54:1-35.4. The Director's determination "cannot be challenged merely because a different method in any part of the complex process could be equally reasonably defended." City of Bayonne v. Division of Tax Appeals, 49 N.J. Super., at p. 239.
The Director's classification is reasonably justified. It has been uniformly followed throughout the State. In administering the complex task that is his, he can make the use classification of the property most easily by a view thereof. If no structures exist, then the land is vacant land. So long as he applies this criterion to all concerned, as he does, the statutory function of achieving near equality of treatment is accomplished.
We uphold the Director's classification as reasonable and find no error in the ruling of the Division of Tax Appeals that the sale of the 13.0551 acres belonged in category No. I as a sale of vacant land.

IV.
The county tax board must promulgate an equalization table of its own. N.J.S.A. 54:3-17. The Director's table is adopted by most counties, but it is not binding on them. Passaic v. Passaic County Board of Taxation, 27 N.J. 467 (1958). The county tax board adopted the Director's *560 table, as revised by the Division of Tax Appeals. The municipality is entitled to a hearing on such adoption. N.J.S.A. 54:3-18; Kingsley, supra, 40 N.J., at p. 346.
In this case, Bayonne had a hearing on the table which included the Humble sale as a vacant land sale. The city contended that for county purposes the land was industrial. The Division found that the land was vacant. The proofs support that conclusion.
The judgments of the Division of Tax Appeals are in all respects affirmed.