ANDREW, J.T.C.
This is an appeal by Cranbury Township from the 1984 county equalization table promulgated by the Middlesex County Board of Taxation. Cranbury contends that the ratio of 53.70% assigned to it is incorrect.
Plaintiff challenges the failure of the Middlesex County Board of Taxation to use a sale of property known as the Firestone Warehouse and Distribution Center (designated as SR-1A# 4879933) located at Station Road, Cranbury and more particularly identified as Block 10, part of Lot 1 and Block 10, Lots 5, 6 and 8 on the Cranbury tax map, in arriving at an equalization ratio for Cranbury. Plaintiff contends that the sale meets all of the required elements for inclusion and that its omission by defendant in fixing the county equalization table was incorrect and unjust.
Defendant maintains that the sale is not usable and was correctly excluded from defendant’s equalization study because: (1) the property sold was less than an entire assessment parcel and therefore there was no comparative relationship between assessment and sales price for sales-ratio purposes and (2) the property sold partially included property preferentially assessed under the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seg., and therefore the comparative relationship between assessment and sales price necessary for sales-ratio purposes was lacking.[1]
Prior to the December 15, 1982 sale in question, Firestone Tire and Rubber Company owned Block 10, Lot 1 and Block 10, Lots 5, 6 and 8. Block 10, Lot 1 was assessed as three line items on the Cranbury assessment list, while Block 10, Lots 5, 6 and 8 were assessed as one parcel. These assessments appeared as follows on Cranbury’s 1982 tax list:
*504 Block Lot Class Land Area Assess. Improv. Assess. Total
1 10 13,000 44,500 3A 1 $ 13,000 $ 31,500 (nonqualified acre farmland)
10 1 4A 3 $ 50,700 $ 64,700 $ 115,400 (commercial) acres
10 1 3b 175 $ 87,500 $ — $ 87,500 (qualified acres farmland)
10 5,6 4B 63 $783,900 $13,650,000 $14,433,900 & 8 (industrial) acres
On April 15, 1982 the Cranbury Planning Board approved a minor subdivision involving the assessed parcels. As a result of the subdivision, approximately 62 acres[2] of Block 10, Lot 1 were partitioned and became part of Block 10, Lots 5, 6 and 8. The combined area was then redesignated as Block 10, Lot 19. This subdivision was reflected in a deed dated May 17, 1982 by which Firestone Tire and Rubber Company transferred to itself a 62-acre portion of Block 10, Lot 1 and also Block 10, Lots 5, 6 and 8, which as noted above then constituted the newly-created Block 10, Lot 19. Subsequent to the completed subdivision the properties were as follows:
Block Lot Class Area Land Assess. Improv. Assess. Total
10 1 3A (nonqualified farmland) 1 acre $ 13,000 $ 31,500 $ 44,500
10 10 4A (commercial) 3B (qualified farmland) 3 acres 117 acres $ 50,700 $ 64,700 $ 115,400 to be determined
10 19 3B (qualified farmland) 62 acres to be determined
10 19 4B (industrial) 63 acres $783,900 $13,650,000 $14,433,900
*505 It was the property that was designated as Block 10, Lot 19 (a total of approximately 125 acres) that was the subject of the sale from Firestone Tire and Rubber Company to Mackman Realty Corp. As can readily be seen, that portion of Block 10, Lot 1 which was subdivided consisted of 175 acres of vacant land which was preferentially assessed under the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq. The subdivision accomplished a partition of approximately 62 acres assessed as farmland, which when merged with the 63 acres in Block 10, Lots 5, 6 and 8 constituted Block 10, Lot 19.
After the subdivision was completed the improvements located on Block 10, Lot 1 were removed. The assessor developed his 1983 assessments as follows:
Block Lot Class Land Area Assess. Improv. Assess. Total
10 1 $ 13,000 3A 1 $ 13,000 — (nonqualified acre farmland)
10 1 4A 3 $ 50,700 - $ 50,700 (commercial) acres
10 1 3B 117 $ 59,000 $ 59,000 (qualified acres farmland)
10 19 3B 62 $ 31,000 $ 31,000 (qualified acres farmland)
10 19 4B 63 $783,900 $13,650,000 $14,433,900[3] (industrial) acres
*506 In accordance with N.J.S.A. 54:3-17 and -18 each county’s equalization table is prepared on an annual basis. In this regard N.J.S.A. 54:3-17 requires that:
Each county tax administrator shall annually ascertain and determine, according to his best knowledge and information, the general ratio or percentage of true value at which the real property of each taxing district is in fact assessed according to the tax lists laid before the board. On or before March 1 of each year, he shall prepare and submit to the county board an equalization table____
N.J.S.A. 54:3-18 directs that each county board of taxation shall: (a) review the equalization table prepared pursuant to N.J.S.A. 54:3-17; (b) determine the accuracy of the ratios; and (c) confirm or revise the table accordingly. The Legislature has not specified any particular method to be utilized by a county board in arriving at its final county equalization table; any reasonable and efficient method may be used. Willingboro v. Burlington Cty. Bd. Tax., 62 N.J. 203, 220, 300 A.2d 129 (1973); Woodbridge v. Middlesex Cty. Bd. Tax., 96 N.J.Super. 532, 536, 233 A.2d 650 (App.Div.1967); Perth Amboy v. Middlesex Cty. Bd. Tax., 91 N.J.Super. 305, 308, 220 A.2d 119 (App.Div.1966), certif. den. 48 N.J. 112, 223 A.2d 491 (1966).
In the formulation of its equalization table defendant relies in part on a sales ratio study conducted by the Local Property Bureau of the Division of Taxation. This study consists generally of the collection of sales data relative to the transfers of real property within each taxing district. The bureau reviews the data and determines whether each sale is usable for sales-ratio purposes based on 27 categories of specific valuation criteria as expressed in N.J.A.C. 18:12-1.1 et seq. This is done to eliminate any transactions which may have been influenced by nonmarket-oriented factors and also, as defendant asserts, to discard those sales which “fail to establish a comparative relationship between the assessment and sales price.”[4]
*507 Defendant also utilizes the 27 categories of nonusable sales transactions in order to eliminate sales which are not suitable for sales-ratio purposes. However, in its calculation of the equalization ratios for each municipality in Middlesex County, defendant, deviating from the methodology of the Local Property Bureau, utilizes a judicially approved one-year, unweighted and unclassified ratio procedure.[5] Perth Amboy v. Middlesex Cty. Bd. of Tax., supra.
Plaintiff does not challenge the ratio procedure utilized by defendant nor does it question the validity of the 27 categories of nonusable sales transactions as outlined in N.J.A.C. 18:12— 1.1 et seq. Rather, plaintiff contends that the sale in question meets all of the requisites of a usable sale within the confines of the cited regulation.
Initially plaintiff maintains that even though the sale in question “appears at first glance to be a ‘split-off’ ” further investigation by defendant would enable it to ascertain the assessment of the parcel sold and therefore “fairness and equity” to plaintiff require that the sale be included in defendant’s sales-ratio study. Plaintiff relies upon Kearny v. Tax Appeals Div., 35 N.J. 299, 173 A.2d 8 (1961) and Kingsley v. Bayonne, 89 N.J.Super. 549, 215 A.2d 769 (App.Div.1965) to support its position that the assessment of the parcel sold can be restructured and then reasonably compared with the sales price. Both of these cases dealt with the subject of nonusability of sales because they constituted “split-offs” as delimited in N.J.A.C. 18:12-1.1(a), which provides as follows:
The deed transactions of the following categories are not usable in determining assessment-sales ratios pursuant to N.J.S.A. 54.1-35.1 et seq.:
6. Sales of property conveying only a portion of the assessed unit, usually referred to as apportionments, split-offs or cut-offs; for example, a parcel sold out of a larger tract where the assessment is for the larger tract.
*508 Plaintiff points out that this exclusionary provision is subject to a general qualification appearing in N.J.A.C. 18:12-1.1(b) which provides:
Transfers of the foregoing nature should generally be excluded but may be used if after full investigation it clearly appears that the transaction was a sale between a willing buyer, not compelled to buy, and a willing seller, not compelled to sell, and that it meets all other requisites of a usable sale.
The first issue therefore is whether the county board should have included the sale in question- in its sales-ratio study even though the sale constituted a split-off. In Kearny v. Tax Appeals Div., supra, the Court considered sales which were technically split-offs and therefore were excluded by the Director of the Division of Taxation in his sales-ratio study. One sale designated as “Congoleum-Nairn, Inc. to Kearnyland, Inc.,” involved property that had been part of a larger tract but had been subdivided prior to the date of the sale. Within the same month of the subdivision of the property on December 18, 1958, the assessor prepared informal assessments reflecting the subdivision but failed, through inadvertance or mistake to include the revision on Kearny’s assessment list for 1959.[6] The sale of the subdivided parcel occurred on January 15, 1959 and was undoubtedly a bona fide transaction. Had the informal assessment revisions been placed on the 1959 assessment lists the sale would have been usable since the sales price of the subdivided property could have been compared with an assessment of the same parcel of property. The Court held that the sale should not be excluded because the old assessment prior to subdivision was continued on the official record solely by mistake.
It is conceded in this case that the subject sale was bona fide in nature. In contrast to Kearny, however, the assessor here *509 did not prepare informal assessments which could have been used for the tax year 1982, nor did his records indicate sufficient data which would permit a mechanical reconstruction of an appropriate assessment and thus enable a comparison to be made between sales price and assessment. Plaintiffs assessor conceded that his judgment would be required to determine an assessment for the newly-created Block 10, Lot 19 rather than simply an arithmetical or mathematical application of record data.
In Kingsley v. Bayonne, supra, the court was also confronted with a sale that was technically a split-off. The sale involved a transfer of approximately 13 acres out of a much larger tract of land which had not been separately assessed. However, it was factually shown that there was a firmly established assessment policy which provided that vacant land in the area of the 13-acre parcel was to be assessed at $20,000 an acre. The court concluded that a simple arithmetical calculation would have permitted the construction of an appropriate assessment for the 13-acre tract and therefore since the assessment of the parcel sold could have been ascertained by recourse to the public records, fairness and equity required that the sale be used. Id. at 557, 215 A.2d 769.
Here it is not possible to establish the assessed valuation of the subdivided parcel “by recourse to the public records and a simple arithmetical calculation.” Ibid. As previously mentioned, the Cranbury Assessor indicated that there was no established policy as to the assessment of the subdivided land in question reflected in the public records which would have permitted an appropriate assessment-sales price comparison for the same property unit. He testified that any assessment of the newly-created parcel would have required his judgment. Therefore, as of the date of the sale in question, the sale price of Block 10, Lot 19 could not be related to an identical parcel that had been assessed for the 1982 tax year.
Plaintiff argues that the subsequent assessment for the year 1983 should be utilized for the purpose of constructing an *510 assessment for comparison with the sale in question. Neither the Kearny nor the Bayonne decision supports this position. If this court were to adopt plaintiff’s method it would be tantamount to an elimination of the nonusable split-off category of sales.
Plaintiff’s proposal offends the essential purpose of the split-off category of nonusable sales. The goal is to insure that sales prices are measured against existing assessments.' The assessment with which plaintiff seeks a comparison is the 1983 assessment rather than the 1982 assessment because there was no 1982 assessment for the exact parcel which was sold by Firestone in December 1982.
The split-off category was implicitly sanctioned by our Supreme Court in Kearny. In that case in the second set of sales considered by the Court, designated as “the duPont sales,” 25 separately assessed parcels were sold in two arms-length transactions occurring within six weeks of each other. Each of the sales involved subdivided portions of assessment units and therefore no ratio between sales price and assessment was determined for each individual sale. Hence both sales appeared to be split-offs. However, the Court held that since the two sales occurred within the same sales-ratio study period they need not be considered separately but could instead be utilized in the aggregate. This would thus permit a comparison of total existing assessments against total sales price.
The Court expressed it this way:
A significant circumstance, apparently given no weight by the agencies, is that the sales disposing as they did of all the duPont property occurred within about six weeks of each other in the same year — a year whose sales were forming the base for the Director’s ratio. If one transaction was completed within the year of the table in question, and the second during the year of the succeeding table, obviously there would be no disagreement with application of the split-off rule to each of them. But occurrence of the two in a single year puts the matter in a different light from the standpoint of achieving a more realistic appraisal of the relation between the aggregate of assessments and the aggregate fair value of the real estate ratables. There should be no difficulty at all at the end of the particular table year, in such cases where all the assessed units are sold, in adding the assessments together, then adding the purchase prices and comparing the total of each to find the ratio between assessment and market value. [35 N.J, at 314, 173 A.2d 8; emphasis supplied]
*511 Even assuming that plaintiff is correct in its assertion that a rational comparison can be made between assessment unit and sales price based on the 1983 assessment of the newly-created Block 10, Lot 19, there still remains the difficulty of comparing a sales price based on market value with an assessment partially based on preferential treatment pursuant to the Farmland Assessment Act. See N.J. Const. (1947), Art. VIII, § 1, par. 1(b); Switz v. Kingsley, 37 N.J. 566, 182 A.2d 841 (1962); Princeton Tp. v. Bardin, 147 N.J.Super. 557, 566-567, 371 A.2d 776 (App.Div.1977), certif. den. 74 N.J. 281, 377 A.2d 685 (1977). No legitimate comparison can be made between the two. The 62-acre portion of the newly-created parcel was assessed at its value for agricultural or horticultural use rather than at its highest and best use. The Cranbury Assessor candidly admitted that a market value assessment was neither in existence at the time of the subject sale nor capable of being computed by resort to public records and simple arithmetical calculation as in Kingsley v. Bayonne, supra.
As defendant has set forth, the Director of the Division of Taxation does not utilize sales of qualified farmland in his formulation of the equalization tables (used as the basis for the distribution of state school aid) because of a lack of comparability. This court has recognized this procedure for the very reasons expressed by defendant in this case. In Union Tp. v. Taxation Div. Director, 176 N.J.Super. 239, 1 N.J.Tax 15, 422 A.2d 803 (Tax Ct.1980) Judge Conley noted that:
The Director routinely applies the class 2 ratio to farmland assessed under the Farmland Assessment Act (N.J.S.A. 54:4-23.1 et seq.) because the lower assessments on such properties are not comparable to sales prices and any resulting assessment-sales ratio would be meaningless. See N.J.A.C. 18:15-9.1(c). Thus, in the case ... of qualified farmland ... the Director’s practice is to use the most reliable current ratio of assessment to sales in a municipality in order to determine a hypothetical true value for each class of property. [Id. 1 N.J.Tax at 23]
Plaintiff emphasizes the fact that sales of farmland-qualified properties are not officially and specifically designated as a nonusable category of sales. This argument fails to recognize that catchall category 26 of the nonusable deed transactions is *512 very broad in scope and that the subject sale is one which “for some reason other than specified in the enumerated categories” is not usable for sales-ratio study purposes. N.J.A.C. 18:12-1.-1(a)(26). Plaintiff offers no logical method by which a rational comparison can be made between a sales price reflecting market value at highest and best use and an assessment, or a large portion of an assessment, reflecting an artificially low value for agricultural use.
Plaintiff does assert that “use of the farmland assessment as part of the overall assessment for the purpose of determining a ratio, works against the municipality since it has the effect of producing a lower ratio than would be produced if a true value assessment was used rather than the farmland assessment.” In spite of this, the argument proceeds, plaintiff will accept the farmland assessment in determining its assigned ratio. All plaintiff is really saying is that if the sale increases the assigned ratio, even though it involves farmland assessment, it should be included. It is extremely doubtful that plaintiff would be willing to accept a sale involving a farmland assessment if the result were to diminish its applicable ratio. This is usually the result, however, since farmland sells at market prices greatly in excess of its artificially assessed value thereby producing unreasonably low assessment-sales ratios. For example, if a 62-acre parcel in Cranbury assessed for farmland at $500 an acre were sold for $10,000 an acre the resulting assessment-sales ratio would be 5%. Although the municipalities in Middlesex County with the exception of Cranbury would not object to the use of such a sale in determining Cranbury’s equalization ratio it is readily apparent that Cranbury would obviously oppose inclusion of the sale.
Plaintiff has offered no authority to support its contention that it would be plainly unfair to permit defendant to exclude the sale in question.
Having failed to establish that the county equalization ratio of 53.70% assigned to it for the tax year 1984 is either incorrect or unjust, plaintiffs complaint must be dismissed. The Clerk *513 of the Tax Court will enter judgment affirming the determination of the Middlesex County Board of Taxation.

At the pretrial conference defendant also indicated that the sale was not usable because the material influence of the subdivision of the property on the sales price had not been reflected in the applicable assessment. Apparently defendant abandoned this argument since it neither briefed the contention nor raised the issue at trial.

Testimony at the trial did not establish the precise acreage, but this does not preclude a determination of the issue presented.

By a judgment of the Tax Court dated May 8, 1983, this assessment was subsequently reduced to:
Land $ 783,900
Improvements 7,216,100
Total $8,000,000

As defendant asserts, "a sale is usable if the property sold can be related to the identical property as assessed.” Several of the 27 categories of nonusable property transactions demonstrate this principle, e.g., sales of property substantially improved subsequent to assessment but prior to the sale, sales of an undivided interest in real property, etc. Ibid.

This procedure is explicated in Gaynes v. Edison Tp., 179 N.J.Super. 373, 2 N.J.Tax 500, 507-508, 432 A.2d 127 (App.Div.1980).

The assessor’s obligation is to ascertain the value of each parcel of real property in the taxing district based on a valuation date of October 1 of the pretax year. N.J.S.A. 54:4-23. However, even though the valuation date is October 1 of the pretax year the assessor has until January 10 of the tax year to complete and submit his assessment list to the county board of taxation. N.J.S.A. 54:4-35.