SMALL, J.T.C.
The Borough of Fort Lee (“Fort Lee”), challenges the promulgation of the October 1,1991 Table of Equalized Values (the “school aid table” or the “table”) by the Director of the Division of Taxation (the “Director”) pursuant to N.J.S.A. 54:1-35.1 et seq. The authority of this court is invoked under N.J.S.A. 54:51A-4(c).
The complaint raises the important and novel question of whether co-operative apartments (“co-ops”) should be classified as residential (Class 2) or apartments (Class 4) (see N.J.A.C. 18:12-2.1 & 2.2) in the computation of the school aid table. N.J.A.C. 18:12A-1.17(a)(3).
The Director has moved for summary judgment on four procedural grounds.
*301 I am persuaded that, as a matter of law, this court lacks authority to consider the merits of Fort Lee’s claim in the context of this litigation.
For the reasons expressed below, the Director’s motion for summary judgment is granted.
I.

Finding of Facts, Computation of School Aid Table, Procedural History, and Basis of Director’s Motion.

Each year, on or before October 1, the Director promulgates the school aid table. N.J.S.A. 54:1-35.1. The contents of the table are specified by statute, but the Director is given great latitude in the data gathering and calculations which underlie the construction of the school aid table. N.J.S.A. 54:1-35.2 and -35.3. The statute authorizes the tax court to review the school aid table. N.J.S.A. 54:1-35.4. The heavy burden of proof imposed upon those who would challenge the school aid table is prescribed by the statute as follows:
In any such proceeding, the director shall be entitled to be heard and the assessment ratios as promulgated shall be presumed to be correct, and shall not be revised or modified by the tax court unless the complainant district shall present proof that upon all the evidence available such ratio or ratios could not reasonably be justified. [N.J.S.A. 54:51A-4(c); emphasis supplied]
The data gathering and calculations associated with the promulgation of each year’s school aid table are time consuming and complex and are fully described in chapter X of the New Jersey Division of Taxation’s Handbook for New Jersey Assessors (1989) (the “Assessors’ Handbook”). There are three distinct procedures which together comprise the Director’s prepromulgation activities.
A.

Data Gathering.

Two separate and distinct data gathering phases precede the calculations:
*302 1. The classification and listing of real property assessments (the SR-3A Form). Each assessor annually lists the assessed value of each parcel of real property in the assessor’s district and classifies it in one of four categories:
Class 1. Vacant land
Class 2. Residential
Class 3. Agricultural
Class 4. Commercial, industrial, and apartments.
The sum of the assessments in each category is then reported to the county board of taxation, and, in turn, to the Director, on Form SR-3A.
'2. The collection and reporting of linked sales and assessment data (the SR-1A Form). The sales price of all real property transactions during a defined sampling period, linked with that property’s assessed value and classification (see immediately preceding paragraph), are reported to the Director on Form SR-1A. The Director analyzes the sales and discards, for purposes of analysis, sales in 27 categories of transactions deemed to yield unreliable results—e.g., sales not reflective of true market value such as sales between related parties. See N.J.A. C. 18:12-1.1. The remaining linked sales-assessment data are the usable sales which the Director uses in the third procedure— calculation of the individual ratios.
B.

Calculations.

The procedures used by the Director in calculating the school aid table have recently been described by Judge Hopkins, quoting the leading Appellate Division case, as follows:
The equalized valuations for each taxing district are determined by the Director on a “weighted” basis and are arrived at as follows. The usable sales are divided into four classifications: vacant land, residential property of four dwelling units or less, farm land, and all other real estate (commercial, industrial, apartment houses, etc.). A separate ratio is determined for each of the four classes on the basis of the transactions in that class and an equalized aggregate valuation of all the real property in that class is determined by application of the class ratio to the aggregate assessed valuations of all property in that class in the taxing district. The total of the aggregate equalized valuations for the four classes is determined by addition, and this is the operative figure for purposes of distribution of state school aid. The total of assessed valuations in the district is then divided by the total last mentioned, resulting in the final weighted average ratio for the district. This is the figure shown in column 2 of the table of equalized valuations (N.J.S.A. 54:1-35.2). Under the particular four-class method of determining the final ratio currently used by the Director, that ratio figure is only a statistic for inclusion in the statutory table. As noted above, the operative figures are the ratios for each of the classifications, as they are the key to the determination of the components of the aggregate equalized valuations, which, in turn, play a part in the statutory formula for *303 calculating the state school aid distributable. [Bayonne v. Division of Tax Appeals, 49 N.J.Super. 230, 234-235, 139 A.2d 424 (App.Div.1958)]
After following the above formula, the Director averages the results with the table for the preceding year to conclude the final average true value for the current year. The total assessed value is divided by the computed market value to obtain the desired ratio. [Kearney v. Director, 11 N.J.Tax 497, 499 (Tax Ct.1991), app. pending (discussing Bayonne quotation above); see also Assessors’ Handbook at X-16 to X-19, and especially table 10-1 at X-18A]
In 1990 and 1991, under the above-described classification program, the assessor of Fort Lee submitted to the Director, through the county board, SR-3A Forms which listed all co-ops in Class 4.
In 1990, the Class 2 ratio, as calculated by the Director, was 84.73% and the Class 4 ratio was 45.97%. In 1991 the Class 2 ratio was 95.31%. In that year there were no usable Class 4 sales; in accordance with established procedures, the Director applied the Class 2 ratio to Class 4 assessments in making the above-described calculations. Assessors’ Handbook at X-18.
Fort Lee’s sole claim of error in this case is that the aggregate assessed value of co-ops ($1,108,573,940 in 1990 and $819,-202,600 in 1991) should have been listed in Class 2, not Class 4.[2] The net result of this asserted error is that this substantial aggregate amount should have been divided by the Class 2 rather than the Class 4 ratio. For the 1991 current year calculation, it makes no difference because the Class 2 and Class 4 ratios are identical. For the 1990 current year calculation, dividing this substantial number by 84.73% rather than by 45.97% would result in a substantial change. Nevertheless, Fort Lee properly conceded at oral argument that the time to challenge the 1990 table expired 45 days after its promulgation *304 on October 1,1990. N.J.S.A. 54:51A-4(c). Only because of the averaging of current year’s numbers with prior year’s numbers does this asserted 1990 error have an impact on the 1991 table. Only if this court is free to look at those 1990 numbers and if Fort Lee can prove that the Director could not reasonably have been justified in promulgating a table based on data classifying Fort Lee’s co-ops as Class 4 rather than Class 2, can Fort Lee achieve some relief. It should be noted that because of the averaging procedures used, all prior year’s ratios play a role in the current ratio, but the influence on the final result of each prior year decreases as it becomes more remote. Fort Lee has not asked for relief by applying its theory to years prior to 1990.
The uncontroverted evidence submitted by Fort Lee is that if the aggregate assessed value of co-ops in 1990 were divided by the Class 2 rather than the Class 4 ratio, its 1991 school aid ratio would be increased by 5.59% (from 74.33% to 79.92%). Fort Lee has not attempted to quantify this difference in dollars of lost school aid. At oral argument the attorneys indicated that since Fort Lee was a minimum school aid recipient, a substantial change in the school aid ratio might have little or no effect on the actual school aid it would receive. It would appear hard to quantify the effect of a change in the school aid resulting from a change in the school aid table because of the ever changing and volatile school aid formula. See King, Battle for School Aid, N.Y. Times, (January 30, 1992) B at 6. Fort Lee has neither shown nor asserted any school aid harm, and I have therefore concluded that a change in Fort Lee’s school aid ratio would not substantially affect its school aid.
What Fort Lee does assert as real harm is the statutorily prescribed use of an assertedly incorrect ratio in the school aid table for numerous other purposes. See Kearny v. Director, 11 N.J.Tax 232, 238-239 (Tax Ct.1990). Plaintiff places particular emphasis on the use of the school aid ratios as the common level of assessment in determining local property tax appeal *305 discrimination cases[3] (commonly known as the chapter 123 ratio, see N.J.S.A. 54:l-35a and -35b; N.J.S.A. 54:3-22; and N.J.S.A. 54:51A-6 (codifying L. 1973, c. 123)). Although there was no precise quantification of this potential harm, the court *306 notes that Fort Lee has a substantial number of pending property tax appeals. As a practical, mechanical, and legal matter, a higher chapter 123 ratio will reduce a municipality’s exposure to reductions in property tax assessments.
In a complaint filed in this court in 1990, Fort Lee challenged the 1990 school aid table. There were no allegations in that suit that the co-ops Fort Lee’s assessor had classified for that year as Class 4 should have been classified as Class 2. In that challenge to the 1990 school aid table the only specific errors asserted were that seven sales used by the Director in preparing that table were not usable. The suit was resolved by a stipulation of settlement, and the subsequent entry of judgment specified which of those sales were and were not usable and adopted a revised 1990 school aid table with regard to Fort Lee.
There are four procedural grounds on which the Director argues that she is entitled to summary judgment:
1. The filing and resolution of Fort Lee’s challenge to the 1990 school aid table bars the current action under the entire controversy doctrine and res judicata.
2. The statute of limitations and interpretive case law preclude this court from examining the 1990 components of the 1991 table.
3. Fort Lee has not alleged substantial harm in the distribution of state school aid. The statute, N.J.S.A. 54:51A-4(c) and the interpretive case law do not authorize this court to hear attacks on the October 1 school aid table when the allegations of harm relate to the uses of that table for purposes other than the distribution of state school aid.
4. Fort Lee is not entitled to relief from damages which result from the acts of its own assessor.
Each of these arguments is discussed in order.
II.

The Entire Controversy Doctrine.

 The entire controversy doctrine (the “doctrine”) aims at preventing piecemeal litigation by barring litigants from *307 raising claims which could have been raised in earlier litigation. R. 4:30A. The applicability of this doctrine to tax court proceedings was made explicit in Union City Associates v. Union City, 247 N.J.Super. 249, 588 A.2d 1279 (App.Div.1991), aff’g, 10 N.J.Tax 581 (Tax Ct.1989). The doctrine
requires that a party who has elected to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding. [William Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J.Super. 277, 292-293, 375 A.2d 675 (App.Div.1977) certif. den., 75 N.J. 528, 384 A.2d 507 (1977)]
As Judge Pressler neatly phrased it:
a component of the controversy may not be unfairly withheld [citation omitted] and a withholding is by definition unfair if its effect is to render the pending litigation merely one inning of the whole ball game. [Id., 150 N.J.Super. at 294, 375 A.2d 675].
In its challenge to the 1990 school aid table, there is no question that Fort Lee could have raised the issue of the proper classification of co-ops. It did not. The challenge to the 1990 school aid table was settled without the co-op classification issue ever having been addressed. Thus, there is no question that it may not challenge the 1990 table—and it has not, despite its affiants’ demonstration of real harm resulting from its failure to raise the issue and prevail at that time.
Fort Lee argues that it is not attacking the 1990 school aid table but the 1991 school aid table. To extend Judge Pressler’s analogy, Fort Lee argues that this case is a brand new ball game. As discussed above, Fort Lee can only succeed in this action: (1) if that part of the 1991 school aid table which is determined by the 1990 school aid table is subject to revision at this time, and (2) if it can prove that the Director’s ratio could not reasonably be justified.
Fort Lee is correct when it argues that the doctrine of res judicata does not bar its claim. Nowhere in the 1990 litigation was the issue of the classification of cooperatives raised, addressed, or resolved. See Zaromb v. Borucka, 166 N.J.Super. 22, 26, 398 A.2d 1308 (App.Div.1979). However, Fort Lee’s own affidavits indicate that it could have raised the issue. It had *308 knowledge of the facts that form the basis of its claim in this action at the time it filed the 1990 challenge. - Fort Lee’s
failure to plead and litigate concerning matters then known to them in complete adjudication of a controversy in suit forecloses them from doing so now. [Malaker Corp. v. First Jersey National Bank, 163 N.J.Super. 463, 500, 395 A.2d 222 (App.Div.1978)]
Having challenged the 1990 school aid table and resolved the issue involved, Fort Lee may not now open issues it could have raised in last year’s litigation under the guise of a challenge to the current year’s school aid table. See Kearny v. Director, supra 11 N.J.Tax at 500.
III.

Right to Reopen Prior Year’s Component of Current Year Table.

Even if the 1991 school aid table is a new ball game, the specific law applicable to challenges to the school aid table precludes me from re-opening components of the 1991 school aid table which are fixed by the adoption—after the statutorily permitted challenges—of a prior year’s school aid table.
Challenges to a school aid table must be brought within 45 days of its promulgation. N.J.S.A. 54:51A-4(c). Fort Lee’s time to challenge the 1990 table has passed. “A prior year’s table is a fait accompli.” Kearny, supra at 501.
Fort Lee argues that East Windsor v. Division of Tax Appeals, 89 N.J.Super. 282, 214 A.2d 708 (App.Div.1965), stands for the proposition that in a challenge to the school aid table under N.J.S.A. 54:51A-4(c), this court may look into components of the current year’s school aid table which were determined by the Director’s promulgation of the prior year’s school aid table. That interpretation is simply wrong.
In Bayonne v. Division of Tax Appeals, supra, the court did not allow a complaining municipality to attack prior years’ sales as they affected a current year’s school aid table. In Kearny, supra, Judge Hopkins refused to permit the re-opening of a prior year’s school aid table even when it became fixed because *309 of the late filing of the prior year’s challenge. See Kearny v. Director, supra, 11 N.J.Tax at 500.
The East Windsor case was a challenge to a county equalization table promulgated under authority of N.J.S.A. 54:3-17, an entirely different statute from those authorizing computation of and challenges to the school aid table (N.J.S.A. 54:1-35.1 et seq.). The court in East Windsor went to great pains to show that
[w]e are not concerned here with an appeal from the Director’s school aid table, as in Bayonne. [89 N.J.Super, at 287, 214 A.2d 708].
The standard of review of county equalization tables and the school aid table are different. East Windsor permits the examination of the Director’s prior year’s school aid table in the context of an attack on a county equalization table. Murnick v. Asbury Park, 95 N.J. 452, 471 A.2d 1196 (1984), permits a taxpayer to attack the Director’s school aid ratio in the context of its use under chapter 123 for local property tax discrimination challenges. Neither case disturbs the holding and the logic of Bayonne. A school aid table must be fixed once the appeal period has expired. Stability in its values, given the number of uses to which it is put (see, Kearny, 11 N.J.Tax at 238-239) is essential. Nevertheless, it may be attacked at a later time in other contexts with regard to its specific uses in those contexts. See East Windsor and Murnick, supra. Thus, Fort Lee might be free to challenge the school aid table’s use under chapter 123 in a Murnick-like case[4] or in a challenge to the Director’s promulgation of the chapter 123 ratios on April 1 of each year. See n. 3, supra, N.J.S.A. 54:l-35b, and N.J.S.A. 54:51A-13 et seq.
As a practical matter, the East Windsor case and the typical challenge to a school aid table raise the issue of the usability of data concerning one or a limited number of specific sales in a *310 single specific municipality (see n. 2, supra). Even if this court were authorized to allow examination and revision of the use of a prior year’s sales, which it is not, the required recalculations would be limited. Fort Lee challenges an entire classification. Because of the importance of uniformity in equalization, were Fort Lee to succeed in this challenge the Director might be compelled to apply this re-classification to all co-ops. Doing it for one year and 567 municipalities would be difficult—doing it for more than one year would be impractical, if not impossible.
IV.

Need to Allege School Aid Harm for Relief Under N.J.S.A. 54:51A-4(c).

I have disposed of this matter on the narrowest of grounds—the procedural facts and circumstances unique to this case. I have rejected Fort Lee’s attempt to bring a time-barred challenge to the 1990 ratios and its attempt to relitigate under a new theory its last year’s settled challenge to those ratios. The doctrine of judicial restraint should compel me to stop. My obligation to facilitate the tax administration process compels me, however, to discuss the more significant procedural issue raised by the Director.[5] My comments might be helpful in avoiding wasteful and duplicative litigation by a municipality in a year when it did not face the two previously discussed unique procedural barriers faced by Fort Lee in this case. I now turn *311 to a discussion of the type of harm which is entitled to relief in a challenge to the school aid table under N.J.S.A. 54:51A-4(c).
The principal purpose for this discussion, which is not essential to my ruling or the holding in this case, is my conclusion that this court lacks authority to examine and resolve a dispute at an early and logical stage. Subsequent to the enactment of N.J.S.A. 54:1-35.1 et seq., the school aid table has been conscripted into use for any number of purposes not thought of at the time of enactment. See Kearny, supra, 11 N.J.Tax at 238-239. None of those legislative or administrative adoptions modified the authority, standard, and procedures for reviewing the school aid table found in N.J.S.A. 54:1-35.4 or N.J.S.A. 54:51A-4(c).
Chapter 123 of the Laws of 1973 mandated that the Director’s April 1 ratios be the school aid table ratios promulgated under N.J.S.A. 54:1-35.1 et seq. and N.J.S.A. 54:l-35a(a). At the time that that additional use was authorized (1973), Bayonne, supra, its discussion in East Windsor, supra, and Cherry Hill v. Director, 119 N.J.Super. 256, 291 A.2d 28 (App.Div.1972) discussed infra, dealing with the scope of review by this court and its predecessors in challenges to the school aid table were established law. Although the enactment of chapter 123 (with the wisdom which comes from the vantage of hindsight) might have included additional authority for court review of the school aid table; it did not.
This challenge to the Director’s 1991 school aid table can only be successful if plaintiff can demonstrate that the Director’s action “could not reasonably be justified.” N.J.S.A. 54:51A-4(c). Based on Fort Lee’s allegation of harm it is important that I discuss Fort Lee’s right to attack the school aid table when it is unable to assert that it will receive additional school aid as a result of its prevailing in this action.
Bayonne and Kearny have held that if a successful challenge to the school aid table will result in only minor or insignificant changes in school aid, then the Director’s actions will not be upset—and implicitly that the Director’s actions in *312 adopting the table were “reasonably justified” within the meaning of N.J.S.A. 54:51A-4(c).
In Cherry Hill v. Director, 119 N.J.Super. 256, 291 A.2d 28 (App.Div.1972), the Appellate Division denied a challenge to the school aid table where the allegation of harm was the use of the school aid table in calculating the county equalization table. There was no allegation of a significant loss of school aid. The court unequivocally held:
Such consequences, however, are not remediable by appeal of the Director’s [School Aid] Table but rather by appeal of the county equalization table to the Division of Tax Appeals. [Id., 119 N.J.Super. at 260, 291 A.2d 28].
If the harm alleged is not school aid harm, then the remedy is not found in a challenge to the school aid table under N.J.S.A. 54:51A-4(c). The opportunity for relief and the proper forum for that relief are found at the time and place that there is alleged harm. Courts have allowed attacks on the ratios in the school aid table in the context of their non-school aid uses. East Windsor v. Division of Tax Appeals, supra (county equalization); Murnick v. Asbury Park, supra (chapter 123 discrimination relief). But courts have not and could not have allowed such attacks in suits brought under N.J.S.A. 54:1-35.4 and N.J.S.A. 54:51A-4(c) challenging the Director’s October 1 table when no school aid harm is alleged.
In Kingsley v. Bayonne, 89 N.J.Super. 549, 215 A.2d 769 (App.Div.1965), the Appellate Division stated that collateral attacks on the school aid table (attacks in their non-school aid uses) are “not merely academic.” Id. at 558, 215 A.2d 769. That court further said that an allegation of harm in the use of the school aid table in calculating the county equalization table is sufficient to merit consideration under N.J.S.A. 54:l-35.4.[6] Nevertheless, the court in that case did not disturb the school aid table. Thus, it did not hold that a collateral attack was *313 permissible—it merely said so.[7] The more recent decision of the Appellate Division in Cherry Hill, supra, and this court’s recent interpretation of Bayonne, supra, in Kearny, supra, are more persuasive. No reported case has allowed an attack on the use of the School Aid Table for other than school aid purposes under N.J.S.A. 54:51A-4(c) or N.J.S.A. 54:3-35.4. The only reported permitted non-school aid attacks were under other statutes. See, e.g., East Windsor, supra and Murnick, supra. Fort Lee invokes the jurisdiction of this court only under authority of N.J.S.A. 54:51A-4(c). Accordingly, plaintiff has not alleged sufficient harm to merit relief under the statute which grants jurisdiction to this court in this case. The cases which have analyzed the statutorily required standard of proof, that the school aid ratios “could not be reasonably justified,” make it clear that those ratios are reasonably justified unless they lead to some not insignificant misallocation of school aid. The standards of review of a county equalization table, the use of the school aid ratio in an individual tax appeal, and a challenge to the April 1 list are different and more easily met.
As previously noted all of the decided cases denying attacks on the school aid table under N.J.S.A. 54:1-35.4 and N.J.S.A. 54:51A-4(c) antedate the adoption and use of the school aid ratios for chapter 123 and the many other uses outlined in Kearny, supra, 11 N.J.Tax at 238-239. That being said, I find no authority for the expansion of the jurisdiction conferred on this court by N.J.S.A. 54:51A-4(c) (and its antecedents) with the enactment of chapter 123 of the Laws of 1973.
The result reached by an analysis of the existing statutes and interpretive case law is clear. What is troubling is a logical analysis of that result. According to the analysis a ratio promulgated on October 1, (1) which is used for the allocation of state school aid, (2) by statute must be used in a list promulgated on April 1, (3) must be used as a standard for measuring claims of real property tax assessment discrimina *314 tion, (4) is, in fact, used in the preparation of many county equalization ratios, and (5) is, by statute, administrative rule, and practice used in many other ways, cannot be challenged in October unless the harm alleged is school aid harm and the Director’s ratios “could not reasonably be justified.” All of the many individuals and entities with an interest in the October 1 ratio must, according to the foregoing analysis, await the proper time and forum to make their challenge to the ratio. It makes no sense to wait until April or later to challenge a ratio which is fixed in October.
What at first appears to be logically troubling may not be so. A successful challenge to the school aid table on the basis that it will result in a flawed chapter 123 ratio will result in a revised ratio for school aid and for all of the many other uses of that ratio even though its only defect may be with respect to chapter 123. A successful challenge to the April 1 table will have no effect on the use of the school aid ratio for the distribution of state school aid, for county equalization purposes, or for the many other uses of the school aid ratio. The review procedure for challenges to the school aid table is strict:
(1) must be filed within 45 days,
(2) standard: “could not reasonably be justified,”
(3) must be decided by January 30.
There are practical school aid distribution administrative reasons for having these strict standards.
Challenges to the subsequent uses of the ratio can proceed at a more leisurely pace with different standards. If, in fact, the school aid ratio is not the proper ratio to use for chapter 123 analysis, why should that failure to meet chapter 123 standards also result in a rejection of a perfectly good school aid distribution formula? A single rejection of the use of the school aid ratio need not logically result in its rejection for all uses. The review process for different uses may require different standards, different schedules, and the presence of different parties. The standard, schedule, and litigants required by N.J.S.A. 54:51A-4(c) were set down with a single use of the school aid ratios (the distribution of school aid) in mind. Those standards *315 and schedules may be needlessly restrictive on Fort Lee’s legitimate right to challenge its chapter 123 ratio. (See n. 8 infra which suggests that the Legislature and the Director examine the administrative difficulties revealed by my analysis of the law and determine whether alternative review procedures should be considered.)
V.

Fort Lee’s Right to Challenge the Acts of Its Own Assessor.

The Director asserts that the action complained of was the action of Fort Lee’s own assessor in supplying the Director with what Fort Lee now asserts was improperly classified data. The Director argues that she mechanically accepted the data as supplied and the borough should not be heard to complain of its self-inflicted wound.
The role of the assessor as agent of the Director, county board of taxation, municipality or independent official is not simple. N.J.S.A. 54:4-24 (assessor must create property lists); N.J.S.A. 54:4-26 (list must follow Director’s methods); N.J.S.A. 54:1-19 (Director may examine assessor); N.J.S.A. 54:1-33 (Director makes tables from data from county board which gets it from assessor, assessor does not report directly). See also Clinton Township Citizen’s Committee v. Clinton, 185 N.J.Super. 343, 448 A.2d 526 (Law Div.1982) (municipality’s governing body has exclusive authority to act for municipality). Having found that the complaint must be dismissed because Fort Lee:
1. has raised an issue that could and therefore should have been raised in its 1990 challenge to the school aid table, and
2. has attacked only the 1990 and not the 1991 components of the school aid table, and
having indicated that, were I required to reach the issue, I would conclude that absent an assertion and proof of school aid harm this court at this time in this litigation would lack authority to examine the school aid table, I expressly decline to rule on or discuss the issue of Fort Lee’s standing to bring this claim.
*316 VI.

Potential For Harm Without an Efficient Remedy.

Having disposed of this matter, I would be derelict in my obligations if I did not make a few brief observations based on a careful review of the evidence and the thorough arguments of experienced counsel in this case, {see n. 5 supra).
1. Plaintiff asserts that in the construction of the school aid table, co-ops should be classified as residential, not apartments.
2. The Director asserts that there is no formal policy on how to classify co-ops.
3. The facts in this case demonstrate that the way in which co-ops are classified can have a substantial effect on the Director’s school aid ratio and in turn on the large number of collateral uses for which it is employed.
4. Although there appears to be general adherence to an, at-best, fairly old, informal “determination” by the Director that co-ops should be classified as apartments, there is at least one, and perhaps more than one municipality which does not follow that classification.
5. The Director does not dispute the fact that it may be more appropriate to classify co-ops as residential rather than apartments. She even suggests that it might be appropriate to create a fifth classification.
6. Uniformity is important in the development of the school aid table, particularly given its numerous collateral uses.
7. There appears to be no single efficient manner to challenge the school aid table unless substantial school aid harm is alleged and proven.
Although I am without jurisdiction to act in this case it would seem appropriate to suggest that the Director provide guidance to the assessors by making a determination as to how co-ops should be classified. Such a determination would then be subject to review under the Administrative Procedure Act. N.J.S.A. 52:14B-1 et seq. See Metromedia v. Director, 97 N.J. 313, 478 A.2d 742 (1984).
The Legislature and/or those courts which may not be bound by Bayonne should determine if that more-than-30-year-old decision barring attacks under N.J.S.A. 54:51A-4(c) on the school aid table ratios as used for non-school aid purposes should be re-examined in light of the numerous additional uses of the table which have been adopted since 1958. See Kearny, *317 supra, 11 N.J.Tax at 238-239.[8] Those undertaking that review must not lose sight of the fact that, under the procedures outlined in N.J.S.A. 54:51A-4(c), all of those affected by the many uses of the school aid table ratios do not receive notice of, or have standing to participate in, the proceedings.[9] Clearly, the relief provided by Mumick—the right to challenge a school aid ratio at the time of a local property tax appeal—provides some relief. A possible challenge to the Director’s April 1 table pursuant to chapter 123 (see n. 3 supra, N.J.S.A. 54:l-35b and N.J.S.A. 54:51 A-13 et seq.) would provide additional relief. However, since many local property tax challenges are determined by negotiation with the assessor and at the county tax board, a timely determination of the correct ratio is important to both tax collectors and taxpayers prior to the initiation of Tax Court litigation. Thus, a challenge to the October 1 school aid table results in a more efficient tax administration process than litigating the issues in the context of individual tax appeals or even in challenging the Director’s promulgation of the chapter 123 ratios on April 1. See n. 3 supra. It also seems inequitable that a municipality which can allege school aid harm can have its chapter 123 ratio resolved in an earlier and more *318 efficient manner than can a municipality which may have real chapter 123 harm but no school aid harm. Finally, there is something to be said for not placing the responsibility for determination of this important and complex issue on individual taxpayers in the context of individual tax appeals.
I have directed that the Clerk of the Tax Court enter an order granting defendant’s motion for summary judgment..

Note that Fort Lee’s challenge is to just one of the three component operations in the construction of the school aid tabic. The usual challenge is to the determination of usable and non-usable sales. See, e.g., Kingsley v. Division of Tax Appeals, 40 N.J. 338, 192 A.2d 561 (1963); Union Township v. Director, Division of Taxation, 1 N.J.Tax 15, 422 A.2d 803 (Tax Ct.1980). I have found only one reported challenge to the Director’s classification procedures, Kingsley v. Bayonne, 89 N.J.Super. 549, 558-559, 215 A.2d 769 (App.Div.1965). In that case the Director’s classification of vacant industrial land as Class 1, vacant land, rather than Class 4, industrial, was sustained.

The Assessors’ Handbook explains:
In an effort to systematize the adjudication of property tax appeals where discrimination is pleaded, the Legislature by the enactment of Chapter 123, Laws of 1973 adopted a procedure for use by tax appeal hearing bodies (county boards of taxation, the Tax Court, and the Appellate Division of the Superior Court) whereby the extent of relief to be granted, if any, could be calculated, once the true value of the property under appeal was determined by the hearing body.
On April 1 of each year the Director of the Division of Taxation publishes an "average ratio” and a "common level range” for each municipality. These figures are published in booklet form for each municipality in the entire state and are mailed to each county board of taxation, to each assessor and to each municipal clerk.
(1) The “average ratio” for a taxing district as used here corresponds to the average ratio promulgated by the Director on the preceding October 1 for State School Aid purposes, subject to change as the result of appeal and judgment of the Tax Court.
(2) The “common level range” for a taxing district is that range which is calculated to be 15% plus and minus of the average ratio. For example, where the average ratio is found to be 78.00%, the common level range would be: Lower Limit—66.30%, Upper Limit—89.70%.
True value for purposes of the appeal adjudication process is that value deemed to be the price a willing buyer would pay to a willing seller at private contract on October 1 of the year prior to the year at issue, as determined by the hearing body.
A ratio is struck by dividing the assessed value of the property under appeal by the true value of the property as determined by the hearing body. This ratio is called "subject property ratio”.
(1) If the subject property ratio falls within the common level range [plus or minus 15% of the average ratio] no reduction is to be made in the assessed value of the appealed property____
(2) If the subject property ratio exceeds the upper limit of the common level range, or falls below the lower limit of the common level range, the assessment is to be determined by multiplying the average ratio for the taxing district times the true value for the subject property as determined by the hearing body. [Assessors’Handbook at XI-36 through 38; emphasis supplied; references, subsections and titles omitted]
The bottom line is that a higher average ratio leads to:
(1) a higher common level range and fewer taxpayer appealed assessments which will fall outside of that range and (2) when discrimination is proven, to arrive at the appropriate assessment the fair market value of the property is multiplied by a larger percentage, resulting in a larger assessment.

Although Murnick established the right of a taxpayer to challenge the school aid table in the context of an individual tax appeal it did not specifically determine, and I need not here decide, if the municipality has the same right to attack the school aid table in such a proceeding.

As former Chief Justice Weintraub said
... there is no constitutional mandate that a court may not go beyond what is necessary to decide a case at hand. Whether an issue will be dealt with narrowly or expansively calls for a judge’s evaluation of many things, including the need for guidance for the bar or agencies of government or the general public. To that end, the Court may express doubts upon existing doctrines, thereby inviting litigation, or may itself raise an issue it thinks should be resolved in the public interest, or may deliberately decide issues which need not be decided when it believes that course is warranted. [Busik v. Levine 63 N.J. 351, 363-364, 307 A.2d 571 (1973)].
This concept was applied to tax cases by Judge Andrew in West Milford v. Garfield Recreation Committee, 194 N.J.Super. 148, 155, 476 A.2d 333 (Law Div. 1983).

Somewhat surprisingly the Appellate Division did not discuss or cite this prior pronouncement in its subsequent ruling to the contrary in Cherry Hill v. Director, 119 N.J.Super. 256, 291 A.2d 28 (App.Div.1972).

ln legal parlance its statements were mere dicta.

it might be an appropriate time for the Legislature and the Director to review the appropriateness of the use of the school aid ratio as now calculated as a standard for measuring local property tax assessment discrimination claims. The placement of co-ops in Class 4 for school aid purposes may be proper; for property tax assessment discrimination purposes, it may not be. Additionally, it is appropriate to examine the standard which must be met for a successful challenge to each of the various uses of the ratios and the proper procedures for that review. Although for the allocation of state school aid the proper test may be "could not reasonably be justified", for chapter 123 purposes a different standard might be more appropriate. The automatic use of a single ratio designed for a single purpose for many other purposes should be periodically examined. The limited examination of the facts in this case indicates that that review of uses, standards, and procedures is best conducted by a body with greater flexibility than a court which must limit its determination to the controversy and facts which are brought to its attention.

Note, for example, that in challenges to the county equalization table by any municipality in the county—every other municipality in the county must be given notice and an opportunity to be heard. N.J.S.A. 54:51A-4(a).